[No. 10586.  Department Two.  December 27, 1912.]

PHIL D. THOMPSON *et al.*, *Respondents*, v. SEATTLE, RENTON & SOUTHERN RAILWAY COMPANY, *Appellant*.[1]

ABATEMENT AND REVIVAL—SURVIVAL OF ACTION FOR DEATH—STATUTES—CONSTRUCTION—GENDER OF PRONOUN. Rem. & Bal. Code, § 194, providing that no action for a personal injury to any person occasioning his death shall abate if he have a wife or child living etc., or certain other relations dependent on him for support, is not confined to injuries to male persons, in view of § 144, requiring a liberal construction of the code, and § 148, providing that words importing the masculine gender may be extended to females also; and in view of other sections requiring such extension of the masculine pronoun.

SAME—ACTION FOR DEATH—STATUTES—CONSTRUCTION. Such section is not to be confined to males, as the person upon whom the duty of support devolves.

DEATH—ACTION FOR WRONGFUL DEATH—PROXIMATE CAUSE. Where the immediate cause of a death was pleurisy with effusion, following an accident, the proximate cause of the death was the cause that produced the pleurisy with effusion.

DEATH—EVIDENCE—DEATH CERTIFICATE—FOREIGN STATUTES—PRESUMPTIONS. The presumption that the laws of a sister state are the same as our own, which provide that a death certificate filed with a county auditor shall be *prima facie* evidence of the facts recited, does not make a death certificate filed in a sister state *prima facie* evidence in the courts of this state.

[1]Reported in 128 Pac. 1070.

APPEAL—REVIEW—HARMLESS ERROR—INSTRUCTIONS. In an action for personal injuries, revived on behalf of heirs after the death of the plaintiff, error in an instruction that the heirs could recover such a sum as the plaintiff could have recovered if she were alive at present, is cured, when, upon objections made, it was explained to cover only such pain and suffering as the plaintiff suffered up to the time of her death.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. In an action for personal injuries, revived in favor of heirs upon the death of the plaintiff, in which the recovery is limited to the pain and suffering endured for nine months, a verdict for $10,000 is excessive, and should be reduced to $7,000.

Appeal from a judgment of the superior court for King county, Albertson, J., entered January 24, 1912, upon the verdict of a jury rendered in favor of the plaintiffs for $10,000, for personal injuries sustained by a passenger in a street railway collision. Affirmed on condition of remitting $3,000.

*Kerr & McCord,* for appellant.

*Peters & Powell,* for respondents.

FULLERTON, J.—The appellant owns and operates a street and interurban railway system in the city of Seattle and territory adjacent thereto, and is a common carrier of passengers for hire. On April 30, 1910, one Elizabeth Bell, while a passenger on the appellant's railway, was injured in a collision occurring thereon, and thereafter commenced this action to recover for the injuries suffered. After commencing the action, and some nine months after receiving the injury, Mrs. Bell died, leaving surviving her as her sole heirs at law an adult daughter and two minor sons. Thereafter these heirs, the minors appearing by a guardian *ad litem,* applied to the court through their counsel for leave to prosecute the action to final judgment. The court granted the application over the objection of the appellant, and thereupon the applicants filed an amended and supplemental complaint, repeating the allegations of the original complaint filed by their mother, and alleging in addition thereto the fact of her

death, their relationship to her, and that her death was occasioned by the injuries she received in the collision. A demurrer was interposed to the complaint, which the trial court overruled. An answer was thereupon filed which put in issue the material allegations of the complaint, and on the issues thus joined a trial was had to a jury, which resulted in a verdict and judgment for the respondents in the sum of $10,000. This appeal is taken from the judgment entered.

The first assignments of error relied upon by the appellant challenge the right of the respondents to prosecute the action to judgment. It is contended that, since an action in tort for personal injuries at common law did not survive the death of the complainant, it is essential that some statutory authority authorizing such prosecution be found before it can be said that the right exists, and that in this state there is no such statute. The trial court found this authorization in that section of the code (Rem. & Bal.) relating to the survival of actions, which reads as follows:

"Sec. 194. No action for a personal injury to any person occasioning his death shall abate, nor shall such right of action determine, by reason of such death, if he have a wife or child living, or leaving no wife or issue, if he have dependent upon him for support and resident within the United States at the time of his death, parents, sisters or minor brothers; but such action may be prosecuted, or commenced and prosecuted, in favor of such wife or in favor of the wife and children, or if no wife, in favor of such child or children, or if no wife or child or children, then in favor of his parents, sisters or minor brothers who may be dependent upon him for support, and resident in the United States at the time of his death."

It is insisted by the appellant, however, that this section has no reference to an action a female person may have begun for a personal injury, or a right of action she may have for such an injury, but refers solely to such rights as they pertain to a male person. It is argued that this is evidenced not only by the literal wording of the statute, since the masculine

pronoun alone is used, but by its evident meaning, as its purpose was to provide for those dependent upon the injured person for support, and this duty usually devolves upon a male person. But we cannot accept this as a correct interpretation of the statute. That the use of the masculine pronoun was not intended to confine the right of survivorship to actions accruing to male persons alone is made clear by reference to the contemporaneous statutes relating to the civil and criminal procedure, of which this section forms a part. By § 144, as it is numbered in Remington & Ballinger's Code, it is provided that the provisions of the code shall be liberally construed, and shall not be limited by any rule of strict construction, and by § 148, it is provided that "words importing the masculine gender may be extended to females also." And other sections, for example, §§ 193, 198, 199, 200, 201, 203, 208, 211, 224, 238, 241, 247, and many more which only a casual reading will disclose, use the masculine pronoun to designate the persons affected by their provisions, when it is manifest by the context that persons of both sexes are included. These considerations make it clear that the mere use of the masculine pronoun in the section in question does not evidence an intent on the part of the legislature to confine its provisions to male persons alone.

The second reason suggested seems to us also to be without force. If the purpose of the statute is the protection of the children and the dependent collateral relatives of the injured person, this purpose is not accomplished by confining its provisions to children and dependent relatives of male persons alone. In this state, as elsewhere, as it is well known, there are many dependent minor children whose sole support is a widowed mother, and who would be left to be cared for by charity or the bounty of the state if deprived of such support. It cannot be that the legislature intended to leave children in this situation unprotected when legislating in behalf of dependent children generally. On the contrary, we would expect such to be the first to receive consideration rather than

to be wholly neglected. We conclude, therefore, that the court did not err in allowing the action to be prosecuted to judgment by the respondents.

The appellant next contends that the evidence was insufficient to make a case for the jury on the issue that Mrs. Bell's death was caused by the injuries which she sustained in the accident. It was given in evidence, and apparently conceded, that the immediate cause of her death was pleurisy with effusion, and the appellant apparently argues that this was the proximate cause of her death. But clearly the proximate cause of her death was the cause that produced the pleurisy with effusion; that is to say, whether the pleurisy with effusion was or was not the result of the accident. On this question, the most that can be said is that the evidence was conflicting. Being so, it was of course a question of fact for the jury and not one of law for the court. But it will serve no useful purpose to review the evidence. Our perusal of it has convinced us that there was evidence sufficient to sustain the verdict, and this is as far as we have a right to inquire.

Elizabeth Bell died in the state of Kentucky. Immediately following her death, the attending physician prepared and filed with the bureau of vital statistics of Kentucky a certificate stating the fact and cause of her death. This certificate was read in evidence by the respondents as a part of their case in chief in the present action. At the close of the evidence, the appellant requested the court to instruct the jury to the effect "that the death certificate offered by the plaintiffs in this case is in itself *prima facie* evidence of the cause of her death." The court declined to give the instruction as requested, but gave in lieu thereof the following:

"In the absence of other testimony, gentlemen, the certificate of the physician who signed the death certificate would be *prima facie* evidence of the cause of death, but in passing upon the cause of death you will take into consideration not only the death certificate, but all of the other evidence before you relating to the cause of death."

The refusal of the court to charge as requested is assigned as error, but we think the instruction given by the court as favorable to the appellant as the law of the case warranted. Our statute, it is true, provides for the filing of death certificates with county auditors, and makes such certificates *prima facie* evidence of facts therein recited; and it is a rule of law in this state that, in the absence of a contrary showing, the courts will presume the statutes of a sister state to be the same as our own. But it does not follow from this that the court will presume that the statutes of the state of Kentucky make a death certificate filed in that state *prima facie* evidence of the facts therein recited in the courts of the state of Washington. The utmost limit of the presumption would be that such certificates were *prima facie* evidence of the facts therein recited in the courts of the state of Kentucky. To hold otherwise would be to hold that the state of Kentucky could declare rules of evidence for the courts of the state of Washington. This is not the meaning of the rule. The presumption simply takes the place of proofs. If it had been proven that the statutes of Kentucky were similar to or identical with our own statutes, and if an issue was presented to the courts of Washington whether a death certificate was *prima facie* evidence in the state of Kentucky of the facts recited therein, no doubt our courts would hold that it was such *prima facie* evidence in those courts because the statutes of the state so provided; but it would not hold that because such a certificate was *prima facie* evidence in the state of Kentucky it was so in this state. On the contrary, whether such certificates are *prima facie* evidence in this state depends upon our own statute, and our statute does not so provide.

The court also gave the following instruction:

"Now if you should find from the evidence, gentlemen, that the death of the mother of these plaintiffs would not have occurred but for the injuries she sustained in the accident which occurred, if you should find in other words that the injury sustained by her in this accident, if you should find she did

sustain injuries, were the proximate cause of the death of the mother of the plaintiffs, then the plaintiffs would be entitled to recover such a sum as the mother could have recovered under the evidence before you if she were alive at present and prosecuting this action at this time."

It is insisted that the foregoing instruction conveyed to the jury an erroneous and misleading impression as to the length of time for which the respondents would be entitled to recover for the pain and suffering endured by Mrs. Bell; that the limitation of time for which recovery can be had is the time between the injury and the time of the injured person's death, whereas this instruction implies that the time lay between the injury and the time of the trial. The instruction is faulty in the respect complained of, but the meaning of the court was made clear in the subsequent proceedings. At the conclusion of the instructions the following occurred:

"Mr. Thompson: If Your Honor please, there is one instruction that the court gave that I want to ask that the court modify unless the court really does mean what the instruction says, our view being that if, upon the state of facts presented, plaintiffs were entitled to recover at all they would not be entitled to recover what the mother might recover if she were today waging her suit, but what she might have recovered had she gotten well at the time that she died instead of dying, had gotten well at that time and was suing to recover what damage she sustained up to that time. If she were now waging her suit she could recover any damages that she had sustained not only up to that time, but that her condition might show that she would suffer in the future, and the rule is very different. The Court: I intended to make it clear to the jury that the damage sustained by the mother of the plaintiffs, if any, up to the time of her death would be the only damage to be considered in arriving at the amount of the award. Mr. Thompson: But Your Honor stated the damage that she could recover if she were now alive and prosecuting this suit here today in her own behalf. The Court: I intended to say if she had tried the case on the day before her death. Of course the jury could not consider any suffer-

ing unless she suffered.  Mr. Thompson: If Your Honor
will make that clear to the jury.  It may have been clear to
the jury, but it was not to me.  The Court: Perhaps the court
was not clear in the statement.  It is not to be presumed that
the mother of the plaintiffs suffered anything after her death
and the only suffering that the jury can consider in fixing
the amount of the award, if they should find for the plaintiff,
would be the suffering she endured from the time of the ac-
cident, on account of the accident, up to the time of her death.
Mr. Thompson: Not including the death itself.  The Court:
Oh, no.  No damages resulting from the death can be con-
sidered by the jury.  I thought I so stated in clear terms."

The cause was thereupon argued to the jury by counsel,
at the conclusion of which the following occurred:

"A Juror: Your Honor, may I ask one question?  The
Court: Yes.  The Juror: If we should find for the plaintiff
is it simply for nine months' suffering.  Do we find anything,
as I understand it, nothing for death, nothing for the minor
heirs; it is simply for the suffering this woman sustained
during the nine months she lived after the accident?  The
Court: Yes, what would have compensated her for the con-
ditions brought about by this accident, the suffering, mental
and physical that she may have endured.  The Juror: And
simply for the time between the accident and the death?  The
Court: Yes."

It seems to us clear that such error as there was in the
instruction as first given was cured by these subsequent pro-
ceedings.

The final objection is that the verdict is excessive.  This
objection we think has support in the record.  As we have
said, the jury were limited in their award to compensation for
the pain and suffering the injured person was compelled to
undergo because of the accident, between the time of the ac-
cident and the time of her death.  The jury could award
nothing for her death, nothing for the losses caused the re-
spondents by reason of her death, and nothing by way of
punishment of the appellant because of its negligence. *Swan-
son v. Pacific Shipping Co.*, 60 Wash. 87, 110 Pac. 795;

*Helland v. Bridenstine*, 55 Wash. 470, 104 Pac. 626. The causes for which the award could be made being thus limited, we think $10,000 excessive. It is not, however, necessary that a new trial be awarded, as we think the respondents should have the privilege of accepting a judgment for such sum as the court feels that it could affirm without submitting the question of the amount of the award to a second jury. The order therefore will be that, if the respondents, within thirty days after the remittitur from this court reaches the trial court, consent in writing to take a judgment for $7,000, the trial court is directed to enter a judgment in their favor for that sum; otherwise to award a new trial.

MOUNT, C. J., MAIN, ELLIS, and MORRIS, JJ., concur.