[No. 13447. *En Banc.* February 16, 1917.]

CEDRIC WHITTLESEY *et al.*, *Respondents*, v. THE CITY OF SEATTLE, *Appellant.*[1]

DEATH—WRONGFUL DEATH—STATUTES—CONSTRUCTION. Rem. Code, § 183 giving a right of action for wrongful death, being in derogation of the common law, is to be strictly construed in determining the persons entitled to sue, but liberally in applying the statute in their favor.

SAME—WRONGFUL DEATH — ACTIONS — PERSONS ENTITLED — STATUTES—CONSTRUCTION. No right of action for wrongful death is given in favor of surviving children for the death of their mother, by Rem. Code, § 183, which provides that the widow or children of a man killed in a duel shall have a right of action therefor; that, when the death of a person is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action therefor; that, if the deceased leave no widow or issue, then his parents, sisters or minor brothers dependent upon him for support may maintain the action; that, when the death is caused by falling through an opening in any sidewalk etc., his heirs or personal representatives, or if deceased leaves no widow or issue, then his parents, sisters or minor brothers dependent upon him for support, may maintain the action; and this, notwithstanding Id., § 148 providing that in the construction of the code, words importing the masculine gender may be extended to females also; since in each case, the words "man," "person" or "deceased" is used in contradistinction to the word "widow" and other descriptive words indicating an intent to compensate for the loss of the husband upon the theory of dependence upon him for support, without any provision for the death of wife or mother; and since the courts cannot read the word "widower" for "widow."

[1]Reported in 163 Pac. 193.

STATUTES—CONSTRUCTION—ADOPTED LAWS. In adopting the law of another state, changes in wording and phrasing will be presumed to have been made deliberately and with a purpose to limit, qualify, or enlarge the adopted law.

SAME—LEGISLATIVE CONSTRUCTION. A law, reenacted with amendments, after it has received a judicial construction, must be considered as adopting such construction.

DEATH—WRONGFUL DEATH—STATUTES—CODE—ADOPTION. The code of 1881, which includes the wrongful death act rewritten as an independent enactment, having been duly passed as appears from the council and house journals although no mention thereof was made in the session laws of 1881, it cannot be argued that the various subdivisions of the wrongful death act are separate enactments erroneously arranged or combined by the compiler of the code as one act.

Appeal from a judgment of the superior court for King county, Jurey, J., entered December 11, 1915, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for wrongful death. Reversed.

*James E. Bradford* and *Howard M. Findley*, for appellant.

*Beeler & Sullivan*, for respondents.

*S. A. Keenan, amicus curiae.*

CHADWICK, J.—This action was brought by the surviving children of Lillian Bell Whittlesey, who met instant death in an automobile accident occurring in the city of Seattle on the 30th day of March, 1913. The case was tried below upon issues of both law and fact, all of which were decided in favor of respondents. The city has appealed. The contributory negligence of respondents is urged, but finding ourselves compelled to the conclusion that respondents have no right of action, we shall not discuss the facts. Those interested in this phase of the case will find them sufficiently set forth in the opinion filed in the case of *Haynes v. Seattle*, 83 Wash. 51, 145 Pac. 73.

It is conceded that the common law gave no remedy for the wrongful death of a person, and that the action must

be sustained, if sustained at all, under § 183 of the code. Whether a child can recover for the wrongful death of its mother is the concrete question presented for our decision.

Some courts have held the Wrongful Death act, which, in some form, is common to all the states (3 Shearman & Redfield on Negligence, Appendix p. 2051 *et seq.*), to be in derogation of the common law, and therefore, to be construed strictly. Others have held the act to be remedial and have construed it liberally. But, having in mind our own decisions, we agree with Judge Cooley, who suggests the correct rule:

"That such statutes should receive a strict construction in determining the persons or classes of persons who are entitled to their benefit and a liberal construction in applying the statute in their favor." 1 Cooley, Torts (3d ed.), p. 553.

The first territorial legislature passed an act giving a right of action to "the widow, or widow or children, or child or children, if no widow, of a man killed in a duel." The scope of the law was extended, by amendment, in 1875 and in 1909. The act as it now appears (the act of 1854 in Roman lower case type; the act of 1875 in Roman capitals; and the act of 1909 in italics), is as follows:

"§ 183. WHEN SURVIVORS' HEIRS OR REPRESENTATIVES MAY SUE.—The widow, or widow and her children, or child or children if no widow, of a man killed in a duel, shall have a right of action against the person killing him, and against the seconds and all aiders and abettors. WHEN THE DEATH OF A PERSON IS CAUSED BY THE WRONGFUL ACT OR NEGLECT OF ANOTHER, HIS HEIRS OR PERSONAL REPRESENTATIVES MAY MAINTAIN AN ACTION FOR DAMAGES AGAINST THE PERSON CAUSING THE DEATH. *If the deceased leave no widow or issue, then his parents, sisters or minor brothers who may be dependent upon him for support and who are resident within the United States at the time of his death, may maintain said action.* WHEN THE DEATH OF A PERSON IS CAUSED BY AN INJURY RECEIVED IN FALLING THROUGH ANY OPENING OR DEFECTIVE PLACE IN ANY SIDEWALK, STREET, ALLEY, SQUARE OR WHARF, HIS HEIRS OR PERSONAL REPRESENTATIVES, *or if deceased leaves no widow or issue, then his parents, sisters or minor brothers who may be dependent upon him for support, and who are resident within the United States at the time of his death,* MAY MAINTAIN AN

ACTION FOR DAMAGES AGAINST THE PERSON WHOSE DUTY IT WAS, AT THE TIME OF THE INJURY, TO HAVE KEPT IN REPAIR SUCH SIDEWALK OR OTHER PLACE. IN EVERY SUCH ACTION THE JURY MAY GIVE SUCH DAMAGES, AS UNDER ALL CIRCUMSTANCES OF THE CASE MAY TO THEM SEEM JUST. [L. '09, p. 425, § 1; Cf. L. '54, p. 220, § 496; L. '75, p. 4, § 4; Cd. '81, § 8; 2 H. C., § 138.] Rem. Code, § 183.

The object of the statute is well stated in *Hedrick v. Ilwaco R. & Nav. Co.*, 4 Wash. 400, 30 Pac. 714:

"It is settled beyond controversy that, at common law, no civil action could be maintained for damages resulting from the death of a human being. But that defect of the common law has been obviated by statute in the several states analogous to the English statute, commonly known as Lord Campbell's act (9 and 10 Vic. c. 93) though often varying more or less from its provisions, especially as to the party entitled to maintain the action. The object and purpose of these statutes is to provide a remedy whereby the family or relatives of the deceased, who might naturally have expected maintenance or assistance from the deceased, had he lived, may recover compensation from the wrongdoer commensurate with the loss sustained."

The first case bearing on the question now to be decided is that of *Noble v. Seattle*, 19 Wash. 133, 52 Pac. 1013, 40 L. R. A. 822. In that case, the father and mother brought suit to recover for the death of a son, claiming to be "heirs" within the meaning of the statute. The objection that the word "heirs" does not include parents and collateral relatives was successfully urged. The court refused to take the word "heirs" from its setting, saying:

"While in general the term 'heirs' includes collateral kindred and those who take under the statute of distribution, we think that in view of the entire legislation upon the subject it never was intended that parents or remote ancestors might maintain actions like the present, and that the word 'heirs' as used in § 138 should be held to include only those persons who are thereinbefore specifically mentioned, viz.: 'The widow, or widow and her children, or child or children if no widow.' "

The case was directly challenged but was passed as the settled law in *Nesbit v. Northern Pac. R. Co.*, 22 Wash. 698, 61 Pac. 141, and *Copeland v. Seattle*, 33 Wash. 415, 74 Pac. 582, 65 L. R. A. 333. It was suggested in each case that the court, as then constituted, might decide otherwise if it were an original question, but the *Noble* case was adhered to under the doctrine of *stare decisis*.

The next case of interest is that of *Johnson v. Seattle Elec. Co.*, 39 Wash. 211, 81 Pac. 705. It was alleged that Mattie Johnson, the wife of Christian Johnson and mother of Merinus Colmer Johnson, one of the plaintiffs, had met her death by reason of the negligence of the defendant. The surviving husband and children joined in an action to recover damages. The defendant demurred upon two grounds: (1) That several causes of action were improperly joined; (2) that the complaint did not state a cause of action as to Christian Johnson. The trial judge dismissed the action. This court, adhering to the doctrine of the *Noble* case and those following it, held squarely that the right of either husband or wife to sue for the death of the other depended entirely upon legislation, and that a statute giving a right of action that did not theretofore exist would not be extended by construction beyond the class or classes specifically mentioned therein. The court said:

"With the construction already given this statute by this court, it cannot be held that the legislature intended to confer a right of action upon a surviving husband. If it had intended to confer so valuable a right upon a widower in his own behalf, it would doubtless have so said in express terms."

A right of recovery was denied the husband although the merit of the argument, and it was most ably presented in the briefs of the plaintiffs that the loss of a wife to a husband was as great as the loss of a husband to the wife, was not denied. The argument was rejected as a matter for the legislature. In passing upon the right of the child to recover, it was said:

"It is urged that the cause of action in favor of the minor son for the loss of his mother should have been permitted to stand. It was, however, improperly joined with another. This is a statutory ground of demurrer, and the demurrer was properly sustained upon that ground. The order sustaining the demurrer gave leave to amend, so that the son might have separately stated his cause of action. He declined to amend, and there remained nothing for the court to do but render judgment for the respondent."

From this it is insisted that, granting that a surviving husband has no right of action for the death of a wife, the *Johnson* case does not stand as an authority against the right of a child to sue for the death of a mother; and that by the use of the words, "so that *the son might have separately stated his cause of action,*" the court actually held that the son had a cause of action. Looking to the face of the opinion and to that alone, this might seem to be so, but a resort to the record and the briefs of counsel convince us that the case decided against the child did not depend alone upon the question of misjoinder. In the beginning, it was the evident purpose of the trial judge and of counsel to submit that question to the court. When the demurrer was sustained, leave was granted to amend. Plaintiffs refused to amend, and the right of the child to maintain the action although the father was dismissed out of the case was contended for by plaintiffs in their briefs. Now it would follow that the dismissal of the father's right of action would not operate as a dismissal of the right of the son to maintain the action if he could in fact state a cause of action. In this we find the only legal reason for the further observation of the court: "He declined to amend, and there remained nothing for the court to do but to render judgment for the respondent." The opinion operates either as a denial of the right by the son to prosecute a separate suit or the question was left open. In either event, the court did not impliedly hold that a child could maintain an action for the death of a mother.

But the reasoning of the court denying a right of action to the father is equally forceful to deny a right to the child; or, as it may be put, a statute granting a right of action will not be extended beyond its terms.   The right of action given by statute is:  (1) To the widow, widow or children, or child or children of a *man* killed in duel; (2) to his heirs or personal representatives, or if there be no widow, child or children then to dependent parents, sisters and minor brothers; and (3) in case of death caused by an injury in falling through any opening in any sidewalk or street, to the heirs or representatives, or if the deceased leaves no widow etc., then to dependent relatives, etc.   In each instance the word "man," "person," or "deceased," is used in contradistinction to the word "widow," and other descriptive words, not only implying, but suggesting, with all the force of apt expression, that the legislature had in mind the word "man," or "male person," or "deceased male person," in the same sense as the word "man" is used in the first enactment ever put upon our statute books—that is, the act of 1854; the central thought of the legislature evidently being that the husband was the support of the family, and that his death would operate to deprive the widow, or widow and children, or child or children, of such support.   This theory of dependence upon the husband is further emphasized by reference to the act of 1909, where the right of action is extended to include dependent parents, sisters, and minor children.   It seems never to have occurred to the legislature that children might be dependent upon a mother; that a husband might suffer a loss by reason of the death of a wife; or, if it did, the thought was rejected.

Lord Campbell's act, 9 and 10 Vic. c. 93, which, in the language of Judge Cooley, has formed the model for much of the legislation in this country, being passed, as said by this court in *Hedrick v. Ilwaco R. & Nav. Co., supra,* to obviate the defects in the common law, is plain in its terms. It leaves no room for construction.   But it is only valuable

to us as a standard for the purpose of comparison and as an aid in finding the legislative intent. And here is to be noted a plain departure from Lord Campbell's act. By § 2 of that act, it is provided that the action "shall be for the benefit of the wife, husband, parent and child of the person whose death shall have been caused," etc. If, then, in drafting our statute, the legislature deliberately omitted the word "husband" from the act, it would seem that it did not intend to extend the benefit to a surviving husband or to anyone other than a widow or children dependent upon, or orphaned by the death of, the father.

It is one of the most ancient, as indeed one of the safest, rules of statutory construction that, where the legislative body adopts the law of another state or country, all changes in words and phrasing will be presumed to have been made deliberately and with a purpose to limit, qualify, or enlarge the adopted law as the change in words and phrases imply. Lewis' Sutherland, Statutory Construction, § 404; 36 Cyc. 1157; *Howells Min. Co. v. Grey*, 148 Ala. 535, 42 South. 448; *Kirman v. Powning*, 25 Nev. 378, 60 Pac. 834, 61 Pac. 1090; *Stutsman County v. Wallace*, 142 U. S. 293.

Counsel strenuously insist that in none of the several decisions of this court have we held that a husband or a surviving child cannot recover for the death of a mother. It is not to these cases that we look for a holding upon the exact question before us. It is rather to find whether the principle of strict construction as to the right of action has been asserted by the court. That the court has shown no tendency to trench upon the prerogative of the legislature —to either include or exclude persons or classes—is manifest in all of our decisions.

The right of action in the case of wrongful death being wholly statutory, the legislature having power to give, or to withhold, within the limits of its discretion, it would seem that the omission of the words widower or surviving husband, and the choice of the descriptive word "widow," would

indicate, as plainly as legislative intent can be indicated, a purpose to give no right of action for the death of a wife and mother. The words "child," "children," "issue," etc., qualify and must be read in connection with the word "man," "person," "deceased," etc.

Our attention is called to the rule of Rem. Code, § 144, which provides that the provisions of the code shall be liberally construed, and of § 148 saying that "words importing the masculine gender may be extended to females also." These rules were resorted to by the court in *Thompson v. Seattle, Renton & S. R. Co.*, 71 Wash. 436, 128 Pac. 1070, to save to a husband a right of action under § 194, or, as it is familiarly referred to, the "Survival Statute."

After the first argument of this case, some of the members of the court (the writer being one of them) were of opinion that there was a disharmony in our decisions, and that the rules referred to might be applied in this case. We have given the question our most serious consideration and have decided that, although the rules relied on were rejected in the *Johnson* case and applied in the *Thompson* case, there is no conflict. They were rightly rejected in the one case and rightly applied in the other.

Following the rule that statutes giving or creating a right of action unknown to the common law will be strictly construed when determining the persons or classes of persons who are entitled to their benefit, and keeping in mind our argument upon the main question, we find no warrant for holding that we have power to declare, by resort to the statutes relied on, that the legislature used the word widow, a word of distinct and well understood meaning in the law, inadvisedly. As is said in the *Johnson* case: "If it [the legislature] had intended to confer so valuable a right upon a widower in his own behalf, it would doubtless have so said in express terms." This must be so, for with Lord Campbell's act before it as a model, the legislature might choose or reject beneficiaries at will.

Section 183 creates the right of action and defines those entitled to its benefits. The words employed are common and all expressive. There is no ambiguity or latent meaning in the act. To extend its terms to meet what we conceive to be a legislative omission deliberately contrived would be to create rather than to construe a statute.

There is a vast difference between the application of the statutory rules referred to in such cases as are referred to in the *Thompson* case and in cases where the statute defines a right that did not exist at common law. In the one case, the rules are invoked in aid of an admitted right. In the other case the rule would operate to create a right that has presumably been rejected by the legislative mind.

Section 194 falls within that class of statutes to which the rules of liberal construction and transposition of terms apply, for no right of action is created by it. It merely recognizes a right of action that existed in a living person whether at common law or in virtue of some statute at the time of the death of the party. The right was in the "person" at the time of death. Such a right is one in kind with a chose in action. The rules may be invoked to preserve an existing right but not to create one. They are, after all, no more than familiar expressions of the first rule of statutory construction; that is, that courts will construe statutes to accomplish the legislative intent. The converse of the rule remains unimpaired; that is, that unless the legislative intent is plain, it will not be enlarged by resort to the rule to the exclusion of the context. This is but another way of saying that the rule of the statute does not allure until the meaning of the act under consideration is gathered from the context of the law. To prepare a law for admeasurement by the §§ 144 and 148, we must first read it in the context, giving words in common use their ordinary meaning, rejecting forced constructions, presuming always that words having a technical or a popular meaning have been used in the sense

in which they are used by those for whose benefit the law was made, and so declaring unless the context shows a different intent.

The spirit of the act is to protect against the loss, by wrongful death, of a husband or father. The words "person," "his," "issue," and "heirs" may be construed to mean the feminine as well as the masculine, but when measured in the context with the word "male" in the first subdivision, and the word "widow" in the two succeeding subdivisions— the words having a technical meaning in the light of the whole statute—the conclusion is compelled that it cannot be held that there is a right of action for the wrongful death of a wife or mother without a positive repudiation of words of equal force, and other rules which are so ancient and so well established as to have the force of positive statute law.

The fallacy of counsel's reasoning may be further illustrated. Let us suppose that our statute provided, as it formerly did, that, upon the death of a husband, an one-third of his estate should be set aside to the widow. It would not be contended seriously that any court would find warrant in such a statute for an order setting over to a surviving husband an one-third of the estate of a deceased wife. Now we have a situation—and it is common to all states—which is the same in principle. Our statute—as do the statutes in all the states—provides for the setting apart of homesteads and exemptions to the widow or widow or minor children. We have searched in vain for one case in which the right of a widower, petitioning in his own right, has ever even raised the question; yet it would seem, if counsel's theory be true, that it would have occurred to some one or to some court to hold that the word "widow," as used in creating and granting homestead and exemption statutes, meant, in law, widower as well. For surely a widower might have the same interest in and the same moral right to protection in the enjoyment of a homestead and exempt property as a widow.

The only case approaching it is that of *In re Murphy's Estate*, 30 Wash. 9, 70 Pac. 109, where it was held that a husband was entitled to claim a statutory homestead after the death of his wife. But the court rested the right not upon a construction of the word "widow," but upon the fact that the surviving husband was the head of a family with minor children to sustain, and that the manifest purpose of the statute was to save a homestead for the use of minor children as well as the widow.

Counsel further insist that the statute will not bear the interpretation put upon it in the several cases cited; that, by the terms of the act, a right of action for the death of a wife or mother is given. To sustain their theory, they submit for our construction a part of that part of the statute which, for convenience, we have numbered (2), "When the death of a person is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death." The several definitions of the word "person" are suggested. That the word person is synonymous with the word individual is not to be denied and, were the words quoted all of the statute, we would have no hesitancy in holding that Mrs. Whittlesey was a "person" within the meaning and intent of the statute; that the word "his" should be read "her"; and that these plaintiffs could maintain the action as "heirs."

Our attention is directed to "similar statutes" in California, Utah, and Minnesota, where the right of action for the death of a wife or mother has been upheld. The difficulty in following counsel lies in the fact that they are following statutes which give a right of action for the death of *any* person, whether male or female, in favor of all persons who may be heirs. Moreover they have selected only a part of our statute, rejecting all that may qualify or limit the part relied on. Decisions from other states cannot be safely relied on. To follow cases holding that a husband is an

"heir" or "next of kin" to the deceased "person" would not
aid us in any way, for we find not one statute like, or even
"very similar," to our own. We are bound to consider the
whole statute, its every word and every part. We must
follow the words quoted by the words: "If the deceased leave
no widow," etc.

However the act of 1875 might or should have been con-
strued, the act of 1909 operates as a legislative construction
of the law. When the legislature undertook to extend a right
of action to collateral heirs, it seems to have assumed that
the right granted by the statute was in the surviving wife,
and not in the surviving husband, for it uses the words:
"If there be no widow, or issue then," etc.

Where, as here, the legislature might have, by general
terms, given a right of action to the surviving spouse, but,
instead of doing so, selected from two possible classes, that
is, widows and widowers, one class, *eo nomine*, it would seem
to be no less than an assumption of superior judgment for
courts to hold that it did not mean just what it said. The
words: "If the deceased leaves no widow or issue," are not
words of grant. Their only purpose is to qualify and ex-
plain the words of grant in the next preceding sentence.

A widow is a woman who has lost her husband by death
and who has not married again. A widow is as distinct in
law and in common understanding as an unmarried person,
a wife, a husband, a widower, a master or a servant. No
cases have been called to our attention, and we have found
none, where the word widow has been held to mean anything
else than a woman surviving the death of her husband. The
courts have habitually refused to read the word "widower"
for "widow." *Johnson v. Seattle Elec. Co., supra; Western
Union Tel. Co. v. McGill,* 57 Fed. 699, 21 L. R. A. 818;
*Duerber v. Northern Pac. R. Co.,* 100 Fed. 424.

"The wife upon the death of the husband becomes the
head of the family, and the duty that had previously rested
upon the husband to provide a support for her and children

falls upon her; but the deprivation to her and them by the death of the husband and father of the protection and support which he, as head of the family, had been wont to provide them, and the presumed inexperience and consequent inability to perform as he had done the duties of which while living he had relieved her, doubtless gave occasion for the special provision made by the statute for her as widow, or in case of her not surviving the husband, for his child or children. . . .

"Whether the legislature acted wisely in excluding the husband and children of the intestate wife from the benefits conferred by subsection 5, section 1403, Ky. Stats., 1903, is a matter we are not called upon to determine. The proper construction of the statute is all that concerns us, and we think its language allows of no other meaning than that we have given it." *Thaxton's Guardian v. Walters' Adm'r*, 130 Ky. 235, 113 S. W. 118.

The legislative intent is further evidenced by the fact that, at the time the law was reenacted with amendments in 1909, the legislature had before it the opinion of this court in the *Johnson* case. It was evidently content with that decision, and having passed the statute in so far as it was affected by the decision of the court in the *Johnson* case without amendment, we must conclude that it was, at that time, satisfied with the construction put upon the act, and that it took that means of "giving legislative sanction to our ruling." *State v. Gustafson*, 87 Wash. 613, 152 Pac. 335.

The same situation in which we find ourselves confronted the courts in New York. Under a statute providing for an action for the "exclusive benefit of the widow and next of kin," it was held that:

"It is the pecuniary injury resulting to the wife and next of kin which is to be estimated; but the injury to the husband, when it is the wife whose death has been caused by the defendant's act, is not spoken of as a ground of damages. And the husband is not embraced within the description of next of kin of his wife. Husband and wife, as such, are not of kin to each other in a legal sense, and the husband

cannot take under a settlement limited to the next of kin of his wife. . . .

"The action is a peculiar one, depending entirely upon the statute, and it seems to us quite clear that a compensation for the husband's loss of service cannot be embraced in the damages." *Dickins v. New York Cent. R. Co.*, 23 N. Y. 158.

A like holding was made in *Green v. Hudson River R. Co.*, 32 Barb. 25. The omission was afterwards cured by statute so that "the executor or administrator of a decedent, who has left him, or her surviving, a husband, wife, or next of kin, may maintain an action to recover damages for a wrongful act, neglect, or default, by which the decedent's death was caused, . . ." Gilbert's Annotated Codes, § 1902.

It may be noted in passing that, under statutes giving a right of action to heirs or next of kin or other like expressions, a husband has sometimes been held to be a next of kin. It is upon these cases that counsel most rely. In such cases, the courts have resorted to the statutes of distribution to determine the meaning of the words "next of kin" rather than to the common law definition of the term. But in none of the statutes considered is the word widow, wife, widower, or husband used.

A very scholarly brief has been filed by Mr. S. A. Keenan as *amicus curiae*. With one exception, it has been sufficiently answered. It is urged that the first subdivision of § 183 is confined entirely to damages recoverable for the loss of a husband and father in a duel. It is granted that, by the terms of that subdivision, only the widow, or widow and child or children, can recover. He reasons that the first subdivision should not be considered by the court in construing subsequent subdivisions. He follows the history of the several acts, and undertakes to show that subdivision 1 and subdivisions 2 and 3 are separate enactments; that the act of 1875 was, by apt words, added as a "new section" to follow § 8 of the code of procedure as it was then numbered—§ 8

being the first subdivision of our present § 183. He challenges the decisions of the court, saying:

"Without recourse to the duelling statute enacted in 1854, the court could not have limited the term 'heirs' to 'widow' and 'children';"

and charges that we should reject the first subdivision, and confine our inquiry, for the purposes of construction, to the second and third subdivisions only. He says:

"By mere accident the Act of 1875 (substantially the 2d and 3d parts of our present section 183) was put under the same section number by the compiler of the statute in 1881. The intent of the law must be traced to the acts of the legislature, and not to the *arrangement* of the law by a *compiler*."

The error in this reasoning lies in the fact that whatever may have been the history of the prior enactments, § 183, as it appeared in Hill's Code, § 138; in the Code of 1881, § 8; and in Rem. & Bal. Code, § 183—that is to say, prior to the amendment of 1909—was an independent enactment. It was passed by the legislature of 1881. The code of procedure, revised and rearranged, was introduced as Council Bill No. 66; passed the council and the house and was approved by the governor. The penal code and probate practice act were adopted in the same way.

"It was, therefore, a valid law, even if the person who prepared the bill was not authorized to prepare it. . . .

"That the act of 1881 under consideration is a new and independent act complete within itself is evidenced by the section next to the last, as follows:

" 'Sec. 1295. No statute, law or rule is continued in force because it is consistent with the provisions of this code on the same subject; but in all cases provided for by this code all statutes, laws, and rules heretofore in force in this territory, whether consistent or not, with the provisions of this code, unless expressly continued in force by it, are repealed and abrogated.' Code of 1881, § 1295." *In re Donnellan*, 49 Wash. 460, 95 Pac. 1085.

It is unfortunate that the Session Laws of 1881 make no mention of the three acts by which the code of civil procedure,

the probate practice act, and the penal code were adopted. The legislature provided at that session for the publication and distribution of the new code. It must have believed that the publication of the laws in the form of a code as soon after the adjournment of the legislature as it might be conveniently done, would be a sufficient publication without duplicating that work in the session laws. Both the courts and lawyers have been misled, when searching for the history of our laws, by the Session Laws of 1881; but resort to the journals of the legislature and to the enrolled bills on file in the office of the secretary of state leaves no doubt that § 183 was adopted by the legislature as a new enactment. But if these things were not true, it would not follow that the first subdivision of § 183 is a separate law. Section 183, as it is now written, was reenacted, including the first subdivision, by the act of 1909, Laws 1909, p. 425.

We feel that it is not out of place to suggest to the legislative body that § 183 should be rewritten so that it will be more in harmony with the statutes of almost every other state in the Union, and be available to all of those who ought, in justice, to come within its beneficent purposes.

Reversed and remanded with directions to dismiss.

All concur.