[No. 23862. Department One. November 28, 1932.]

*In the Matter of the Estate of* SALLY FOSTER EATON, *Deceased.*

THE STATE OF WASHINGTON *et al., Appellants,* v. THE CAPITAL NATIONAL BANK, *Respondent.*[1]

*G. W. H. Davis* and *W. F. Van Ruff,* for appellants.
*Frank C. Owings,* for respondent.
*Palmer, Askren & Brethorst, Amicus Curiae.*

[1]Reported in 16 P. (2d) 433.

MILLARD, J.—Sally Foster Eaton died a resident of this state on August 23, 1931. Providing for disposition of the estate to others in the event of the death of either or both of the children prior to attaining the age of twenty-one years, Mrs. Eaton devised and bequeathed her residuary estate to her two adopted children, a fifteen-year-old daughter and a son sixteen years old. The pertinent provision of the will reads as follows:

". . ˘. but in the event of the death of either of my said adopted children before he or she shall have reached their majority, unmarried and without issue, then the survivor shall take the other's share; and in the event that both of my said adopted children shall die before arriving at majority, unmarried and without issue, then my said sister, Julia Resor Foster, or her heirs, shall be the residuary legatees of this my last will and testament. In the event of the death of both my said adopted children before they shall have reached their majority, but leaving issue, then such issue shall take as residuary legatee or legatees, per capita. And in the event my said son shall die before his majority, and leave no issue, but a wife surviving him, then I give, bequeath and devise to said surviving wife, not to exceed one-fourth of my net estate after payment of special bequests; provided, that if one-fourth thereof shall exceed thirty thousand ($30,000.-00) dollars, that sum shall be the total of this gift."

The will was duly admitted to probate. Final report, which provided for the payment of an inheritance tax at the primary rate of one per cent on the residuary estate, and petition for distribution of the estate were filed by the executor. The state inheritance tax division objected to the final report on the ground that an inheritance tax should be imposed at the highest rate (ten per cent), by reason of the contingent remainder to collateral heirs beyond the third degree of relationship to the decedent. From the order approving the

executor's final account and petition for distribution of the estate, the state has appealed.

It is true that the succession rights or interests of the two children and the decedent's sister, or the heirs of the latter, in the residuary estate, are dependent upon contingencies or conditions whereby such rights or interests may be increased, diminished or terminated. However, it does not follow, as appellant insists, that a tax should be imposed upon the right of succession at the highest rate which, on the happening of such contingency, would be possible.

Chapter 146, Laws of 1917, p. 595, § 4 (Rem. Comp. Stat, § 11206), provided, if property were transferred as in the case at bar, for the imposition of a tax upon such transfer at the *lowest* rate which, on the happening of any of the contingencies or conditions, would be *possible*. The act also provided that a higher rate be imposed if, upon the happening of any contingency, the estate was transferred to one who should pay a higher rate. Section 4, *supra,* was amended by chapter 205, Laws of 1929, p. 529, § 2, to provide for the imposition of a tax at the *highest* rate which, on the happening of any of the contingencies or conditions, would be *probable*. The governing statute (chapter 205, Laws of 1929, p. 529, § 2) reads as follows:

"When property is transferred in trust or otherwise and the rights, interests or estates of the transferees are dependent upon contingencies or conditions whereby they may be wholly or in part created, defeated, extended or abridged, such property shall be appraised at its clear market value immediately upon the transfer or as soon thereafter as practicable and a tax shall be imposed upon such transfer at the highest rate which on the happening of any of said contingencies or conditions would be probable under the provisions of this act and such tax so imposed shall be due and payable in the same manner as other tax-

es; *Provided,* That if such tax, so determined, appears to be excessive, the matter may be submitted to the court for determination and adjustment: *Provided further, however,* Where such tax is not so determined by the court, that on the happening of any contingency or condition whereby the said property or any part thereof is transferred to a person or corporation which, under the provisions of this act is required to pay a tax at a lower rate than the tax imposed then such transferee shall recover from the State of Washington the difference between the tax imposed and the tax at the lower rate.

"Estates in expectancy which are contingent or defeasible and in which proceedings for determination of the tax have not been taken or where the taxation thereof has been held in abeyance shall be appraised at their full undiminished clear value when the persons entitled thereto shall come into the beneficial enjoyment or possession thereof without diminution for or on account of any valuation theretofore made of the particular estates for purposes of taxation upon which said estates in expectancy may have been limited. Where an estate for life or for years can be devested by the act or omission of the legatee or devisee, it shall be taxed as if there were no possibility of such devesting."

We refrain from discussing the authorities cited, as no other state has a statute like ours. The statutes of New York and three other states provide for taxation of the trust estate at the *highest* rate *possible.* Our 1917 statute, like the statutes of five other states, provided for taxation at the time of the transfer of the property "at the *lowest* rate which on the happening of any of said contingencies or conditions would be *possible,*" and if the trust later passed to a beneficiary who was required to pay a tax at a higher rate than the tax imposed, then such transferee would pay, at the time of passing, the difference

between the tax imposed and the tax at the higher rate.

Twelve years later, our legislature amended the 1917 act. The present (1929) statute requires the payment of the tax, immediately upon the transfer of the property, at the *highest* rate *probable;* that is, the word "possible" was changed to "probable" and the court was vested with the power to adjust the tax if same "appear to be excessive." In the event that the tax payer did not resort to the court for determination of the tax, a later transferee, if required to pay a tax at a lower rate than the tax imposed upon the prior transferee, could recover from the state the difference between the tax imposed and the tax at the lower rate. In deliberately changing the words, the legislature had some purpose in mind. That purpose was doubtless to limit or enlarge the adopted law as the change in words implies.

"It is one of the most ancient, as indeed one of the safest rules of statutory construction. that, where the legislative body adopts the law of another state or country, all changes in words and phrasing will be presumed to have been made deliberately and with a purpose to limit, qualify, or enlarge the adopted law as the change in words and phrases imply." *Whittlesey v. Seattle,* 94 Wash. 645, 163 Pac. 193, L. R. A. 1917D, 1084.

The word "probable" means likely.

"In common acceptation the word implies when applied to a condition which may be supposed beforehand, that we know facts enough about the condition supposed to make us reasonably confident of it; or, at the least, that the evidence preponderates in its favor." *Gallamore v. Olympia,* 34 Wash. 379, 75 Pac. 978.

"Possible" is defined as "capable of being done." 49 C. J. 1118. The definition of the word "probable"

in *Gallamore v. Olympia, supra,* appears at page 419 of vol. 50 C. J., and in distinguishing the word "possible," the author says:

"Things or results which are only possible cannot be spoken of as either 'probable' or 'natural' for the latter are those things or events which are likely to happen. Things which are possible may never happen, but those which are natural or probable are those which do happen, and happen with such frequency or regularity as to become a matter of definite inference." 50 C. J. 420.

The word "probable" implies a far different meaning than the word "possible." Had our legislature intended to follow the New York law, it would have used the word "possible."

The language of the statute is plain. It admits of but one meaning. That being so, interpretation is unnecessary.

"And if the words of the statute are in themselves precise and unambiguous no more is necessary than to expound these words in their natural and ordinary sense, the words themselves in such case best declaring the intention of the Legislature." Maxwell, Interpretation of Statutes (6th ed.), p. 1.

While it is possible that the two children may not reach their majority, it is likewise possible that some of the other contingencies may never happen. We judicially know that it is more probable or more likely that the two children will arrive at their majority rather than predecease the decedent's sister or the heirs of the latter. We can hardly hold, as a matter of law, that the probability is that the two children of the ages of fifteen and sixteen years will not survive their mother's sister. We agree with the trial court that the probabilities are all in favor of the estate

286

vesting in the lineal heirs, and that the tax should be computed upon that basis under the provision of the statute.

The order appealed from is affirmed.

TOLMAN, C. J., HOLCOMB, MITCHELL, and PARKER, JJ., concur.