[No. 5457.   Decided April 29, 1905.]

38  565|
39  113|

# H. P. DEAN, *Respondent,* v. OREGON RAILROAD & NAVIGATION COMPANY, *Appellant.*[1]

APPEAL AND ERROR—RECORD—DISMISSAL—EXCUSE FOR NOT FIL-
ING TRANSCRIPT IN TIME. An appeal will not be dismissed
for failure to file the transcript within ninety days, where it
appears that within thirty days appellant's attorney addressed
a letter to the clerk of the court directing him to prepare, cer-
tify and file a transcript, and supposed that he had done so,
and the clerk failed to receive the letter, especially where it
occasioned no delay in the hearing and no expense to the re-
spondent (CROW, J., dissenting).

PARTIES—DEATH OF MINOR—ACTION BY PARENTS—MISJOINDER OF
WIFE—PLEADINGS—AMENDMENT. Where the pleadings and evi-
dence in an action for causing the death of a minor child were
objected to on the ground that the husband and wife could not
jointly maintain the action, it was proper, after the close of
the evidence, to grant leave to dismiss the wife as a party plain-
tiff, under the liberal spirit of the code.

MASTER AND SERVANT—NEGLIGENCE—FALL FROM TRESTLE—
STARTING A TRAIN WITHOUT WARNING—PROXIMATE CAUSE. Where
a laborer was knocked off a narrow trestle where the space was
about nine inches between the car and the edge of the trestle,
while he was attempting to close the side doors of the cars of a
gravel train, by reason of the unexpected starting of the train
without warning, the proximate cause of the injury was the
starting of the train and not the narrowness of the trestle.

SAME—ASSUMPTION OF RISKS—SAFE PLACE—OBEYING ORDERS
OF SUPERIOR. If a foreman orders a workman on a gravel train
to get down upon a narrow trestle to close the doors of the
cars, in a very dangerous place, the standing space being only
about nine inches, the servant does not assume the risk of the
starting up of the train, and it is the duty of the master to
keep the train still until the work is finished and the servant
has returned to a place of safety.

SAME—MASTER'S LIABILITY NOTWITHSTANDING CONTRIBUTORY
NEGLIGENCE—MASTER'S KNOWLEDGE—INSTRUCTIONS. In such a case
it is error to instruct that the defendant would be liable notwith-

[1] Reported in 80 Pac. 842.

standing contributory negligence by the plaintiff, if the train was started when the defendant might have known that plaintiff was upon the trestle; since the instruction should have been "if it might have known such fact by the exercise of ordinary care."

APPEAL AND ERROR—REVIEW—VERDICT. The verdict of a jury upon conflicting evidence sufficient to sustain the judgment will not be disturbed upon appeal.

DEATH—ACTION BY PARENTS—MINOR SON NOT CONTRIBUTING TO PARENTS' SUPPORT. Where, in an action by parents for causing the death of a minor son, eighteen years of age, it appears that the son had run away from home, and contributed nothing to his parents' support, there is no evidence of damage upon which to base a verdict.

SAME—INTENTION TO CONTRIBUTE. In such a case evidence is admissible tending to show that the son was capable of earning substantial wages, and had shown a purpose to return home or contribute to his parents' support, and that as a matter of reasonable certainty he would do so.

Appeal from a judgment of the superior court for Spokane county, Richardson, J., entered May 18, 1904, upon the verdict of a jury rendered in favor of the plaintiff, in an action for damages for causing the death of a minor child, employed on a gravel train, and knocked off of a trestle by the starting of the train without warning. Reversed.

*W. W. Cotton, Thomas O'Day,* and *L. S. Wilson,* for appellant, contended, among other things, that a father cannot recover for the death of a minor child where the child was practically emancipated, and there was no reasonable expectation of the receipt of contributions from him. *Nightingale v. Withington,* 15 Mass. 271; *Clark v. Northern Pac. R. Co.,* 29 Wash. 139, 69 Pac. 636; *Fajardo v. New York Cent. R. Co.,* 84 N. Y. App. Div. 354, 82 N. Y. Supp. 912; *Copeland v. Seattle,* 33 Wash. 415, 74 Pac. 582. There was no evidence that he did contribute, and hence no basis for the verdict. *Cooper v. Lake*

*Shore etc. R. Co.,* 66 Mich. 261, 33 N. W. 306, 11 Am. St. 482. See, also, *St. Louis etc. R. Co. v. Sweet,* 60 Ark. 550, 31 S. W. 571; *Bobo v. Bryson,* 21 Ark. 387, 76 Am. Dec. 406; *Hunt v. Thompson,* 4 Ill. 179, 36 Am. Dec. 538; *Fairhurst v. Lewis,* 23 Ark. 435.

*Barnes & Latimer* and *Alfred M. Craven,* for respondent. A contract of emancipation is only provisional, and may be set aside at any time. *Porter v. Powell,* 79 Iowa 151, 44 N. W. 295, 18 Am. St. 353, 7 L. R. A. 176; *Pretzinger v Pretzinger,* 45 Ohio St. 452, 15 N. E. 471, 4 Am. St. 542; *Lovell v. House of Good Shepherd,* 9 Wash. 419, 37 Pac. 660, 43 Am. St. 839. It follows that it has no legal force as to third persons. *Everett v. Sherfey,* 1 Iowa 356. It is not necessary to show that the son ever contributed to his parents' support. *Texas & Pacific R. Co. v. Brick,* 83 Tex. 526, 18 S. W. 947, 29 Am. St. 675; *Post v. Olmstead,* 47 Neb. 893, 66 N. W. 828; *Cooper v. Lake Shore etc. R. Co.,* 66 Mich. 261, 33 N. W. 306, 11 Am. St. 482; *Robel v. Chicago etc. R. Co.,* 35 Minn. 84, 27 N. W. 305; *Boyd v. Byrd,* 8 Blackf. 113, 44 Am. Dec. 740; *Bolton v. Miller,* 6 Ind. 262; *Clarke v. Fitch,* 2 Wend. 459, 20 Am. Dec. 639; *Stovall v. Johnson,* 17 Ala. 14.

Root, J.—Respondent and wife brought this action against the appellant to recover damages occasioned by the death of their minor son, who was killed while working for appellant on and about a train, filling in a trestle with dirt and gravel, hauled by cars constructed for that purpose, and unloaded from said cars while standing upon said trestle. From a judgment in favor of respondent, this appeal is taken.

Respondent moves to dismiss the appeal in this case,

for the reason that the transcript was not certified and filed within ninety days from the time of taking the appeal. One of the appellant's attorneys shows, by affidavit, that on August 8, 1904, which was less than thirty days from the date the appeal was taken, he dictated a letter to the clerk of the court directing him to prepare, certify, and file a transcript of the record in this case, and that he supposed that the clerk had complied with said request and relied thereupon, and did not learn anything to the contrary until he received respondent's brief. The clerk, by affidavit, says that he never received such a letter. It does not appear that the delay beyond the ninety days occasioned any delay in the hearing of this appeal, or caused any expense to respondent or any serious embarrassment. While we do not think that appellant's counsel is free from criticism for not giving the matter more careful attention, yet we do not feel that the oversight of an attorney, who, from the very nature of his business, must be employed and concerned with many different matters, should constitute the basis for punishing his client to the extent of depriving him of the right of appeal, except in those cases where the statute, or the established practice of the court, makes such action imperative. In this case the court would have imposed terms upon appellant, had it been shown that respondent suffered any expense or loss by reason of appellant's neglect and the delay thereby occasioned. The motion to dismiss is denied.

This action was commenced by the parents jointly. Before any evidence was taken, appellant objected to any evidence being admitted, for the reason that plaintiffs were not entitled to recover, and that the complaint did not state facts sufficient to constitute a cause of action. At the close of the case, leave was granted by the court to

dismiss the wife from the case as a party plaintiff. Ap-
pellant contends that this was unauthorized. It is con-
tended that husband and wife cannot maintain this kind
of an action jointly, and that an objection to the introduc-
tion of evidence having been made at the commencement of
the trial, it was too late to permit the wife to be dismissed
as a party after the evidence was put in, and that it was
error to permit the husband to continue the action. With-
out deciding whether or not husband and wife may jointly
maintain an action of this kind, we do not think the trial
court committed error in dismissing the wife and permit-
ting the husband to continue the action. It is not per-
ceived that this action of the court in any manner preju-
diced the rights of appellant. The spirit of our code per-
mits and requires great liberality in all matters of plead-
ing and practice, to the end that substantial justice may
be attained. We think the action of the trial court in this
particular was justifiable.

The train, in connection with which the deceased was
working, consisted of dump cars, which were unloaded by
a plow. This plow was drawn through the train by means
of a cable and engine, attached to what is known as a
Ledgerwood car. It was the duty of the deceased to un-
fasten the doors, and to pass through the cars, cleaning
out the remaining gravel, after the plow had passed through
the train, so that the doors could be closed and fastened
before the cars were reloaded. These cars are ten feet,
six inches, in width, and the sides of the cars are com-
posed of swinging doors, so that when they are unfastened
they swing out at the bottom, and let the gravel out at
the sides. The ties forming the floor or top of the trestle
were twelve feet long, so that the space between the side
of the car and the edge of the trestle would be only about

nine inches more or less. The doors of these cars were unfastened by a lever, and, when the cars were empty, a man standing on the ground could close the doors—they being fastened by a latch at the top of the side of the car. Appellant claims that it was customary to leave these doors open until the train should pull off from the trestle, and that the men would then get down on the ground and close them. Some of respondent's witnesses testified that deceased was instructed by the foreman to get down on the trestle and close these doors immediately after the gravel was discharged, and while the train was still upon the trestle. It was while the train was on the trestle that deceased climbed down for the purpose, as respondent contends, of closing these doors pursuant to instructions; that the train, without any warning, started from the trestle and precipitated deceased therefrom to the ground, some forty feet below, causing injuries from which he soon died.

It is contended by appellant that the narrowness of the trestle made the closing of these doors thereupon a very dangerous work, and that this danger was open and apparent to the deceased, and that he could not himself recover damages, if alive. It is, of course, true that a servant assumes the dangers of his working place that are open and apparent; but we do not think that principle controlling here. The proximate cause of death was not the narrowness of the trestle, or the limited space in which decedent had to work, but it was the unexpected starting up of the train. If, as testified by respondent's witnesses, it was the duty of decedent, in carrying out the orders of the foreman, to get down on the trestle and close these doors while the train stood upon the trestle, it was a service fraught with danger which both the servant and the

master should have taken notice of, and they should have regulated their conduct accordingly. The foreman knew that this was dangerous work, and knew that the starting of the train would constitute an additional, distinct, and pronounced element of danger. It was incumbent upon the master, having ordered the servant into this dangerous place, to keep the train still until the work of closing the doors was finished and the servant had returned to a place of safety. There was a flat contradiction in the evidence as to whether or not the foreman gave instruction to close the doors while the train was upon the trestle, and as to whether or not it was necessary to get down on said trestle to close said doors. This evidence being conflicting, it was a question for the jury to pass upon; and there being sufficient competent and material evidence to sustain respondent's contention in this behalf, the conclusion of the jury cannot be disturbed by this court.

Among other instructions, the trial court gave the following:

"The rule of law upon that subject is, that even though the plaintiff was guilty of negligence in getting down upon the track to close the doors, in violation of the orders of the defendant, its agents and servants, at that particular time in question, although it had been previously the custom to close said doors upon the trestle before said cars were removed therefrom, yet if you find from the evidence that while the plaintiff was engaged in that labor of closing the doors upon the sides of said car, and that the defendant, its agents and servants, had knowledge, or might have known, that he was closing said doors, or was upon the trestle, then and in that event, the defendant would have no right to move said train until said Edgar Dean had completed the work and placed himself out of danger in the movement of said train; and if the railroad company could, by the exercise of ordinary care have prevented the injury

and death of said Edgar Dean, then in that event, your verdict should be for the plaintiff, even though you should find that the deceased was guilty of negligence in going upon said trestle to close said doors at said particular place."

This instruction is erroneous in saying that the appellant would be liable, even though the plaintiff was negligent in getting down upon the track in violation of orders to close the doors, if the appellant or "its agents and servants, had knowledge, *or might have known* that he was closing said doors, or was upon the trestle." If decedent had been guilty of negligence in violating orders, and in climbing down upon the trestle to shut these doors, still the appellant would be liable, if its foreman in charge knew that decedent was in that dangerous place, and likely to be greatly injured or killed when he caused the train to be started up. But the unqualified expression, "or might have known," is too broad. If appellant's foreman, in charge of said train, knew when starting the same that decedent was in this dangerous place, and liable to be thrown from the trestle by the starting of the train, or might and should have so known *by the exercise of ordinary care,* then the master was guilty of actionable negligence in starting said train without warning. It is unnecessary to decide whether or not this erroneous instruction, in view of all the instructions in the case, would be deemed prejudicial error, if there were no other occasion for reversing this case.

It is contended strenuously by appellant that respondent has shown no damages entitling him to any recovery. The evidence shows that the decedent left the home of his parents some years ago without their consent, and some time thereafter enlisted in the army, being dishonorably

discharged therefrom a short time prior to his death. The evidence of respondent and wife shows that, after decedent left, he never sent them any of his wages, or contributed to their support or assistance in any manner whatsoever. Appellant claims that these facts establish a manumission. Respondent argues that he had a right to assert his parental authority over said minor, at any time or place when or where he might find him, prior to his reaching his majority, and that he would have power to collect his wages, and that it must be presumed that the minor would return home, or turn over his wages or a portion thereof to his parents. We do not think, under the facts of this case, that this presumption can be indulged. The boy was just about eighteen years old when he was killed. Under recognized mortuary tables, his expectancy would be greater than five years; therefore, it could be presumed that he would live until he was twenty-one years of age; but it appearing that he had abandoned the home of his parents, and had sent them absolutely nothing since said abandonment, we do not think it a fair presumption to be indulged that his conduct for the few years preceding his death would all be changed, and that he would soon be found returning home or contributing his wages to the parents. This was a matter requiring proof. As the record stands now, we can find no evidence to sustain a verdict of damages.

Ordinarily this would require a reversal, with instructions to dismiss the action; but in this case there are certain things appearing in the record which we think would make such disposition unjust. It appears that certain letters, received by the parents from their son prior to his death, were offered in evidence by respondent for the purpose of showing an intention on his part to do something

for his parents, and an offer of proof of some "agreement," looking to this end, was also tendered. These letters and this agreement were excluded by the trial court. Neither the letters nor the agreement are brought up in the record, and consequently we cannot say whether they were competent evidence, or sufficient evidence, to show that this boy contemplated a change in his conduct, and that it was his purpose and disposition to return, or contribute of his wages to the parents.

If it could be shown that, since leaving home, the boy had, some time prior to the accident, adopted a line of conduct indicating ability to earn wages, and had manifested an intention and disposition to contribute those wages to his parents, and this evidence should be weighty enough to show that there was a reasonable likelihood of his thus becoming a means of financial support and assistance to them, we think they would be entitled to recover such an amount as, under the facts, it would be reasonable to believe they had been deprived of by his death. We think the respondent should be permitted to prove, if he can, by evidence competent for that purpose, that decedent would have been able to have earned substantial wages, and had manifested an intention to give and, as a matter of reasonable certainty, would have given the same, or a material portion thereof to his parents, and that all of the facts surrounding him and bearing upon the question of his career during the rest of his minority were such as to reasonably justify the belief, on the part of a person of ordinary intelligence, that said parents would have received a substantial pecuniary benefit from him, had he not been killed.

The judgment of the honorable superior court is reversed, and the cause remanded for a new trial.

MOUNT, C. J., RUDKIN, and DUNBAR, JJ., concur.

HADLEY and FULLERTON, JJ., took no part.

CROW, J. (dissenting)—I dissent from the opinion of the majority upon the motion to dismiss the appeal. The record shows that the notice of appeal was served July 13, 1904, that appellant's opening brief was served September 20, 1904, and that the transcript was not certified, nor was the same filed with the clerk of the superior court, until after the expiration of ninety days, and after the motion to dismiss had been made by respondent. Section 2 of the act relative to appeals, Laws 1901, p. 29, provides that, within ninety days after an appeal shall have been taken, the clerk of the superior court shall prepare, certify, and file in his office a transcript, etc., said transcript to be so prepared, certified and filed at or before the time when appellant shall serve and file his opening brief. A comparison of this section, and also section 3 of said act of 1901, with the former statute on the same subject, Bal. Code, §§ 6513 and 6514, will clearly show the intention of the legislature to have been to require appellant's transcript to be certified and on file in the office of the clerk of the superior court at or before the time appellant filed his opening brief, in order that respondent might have ample opportunity, for the entire period of thirty days allowed him, to examine and use said transcript in the preparation of his answer brief, thus preserving respondent's rights, so that he might not be compelled to take any steps whatever to aid the appellant in perfecting his appeal, by having a transcript prepared and certified after the filing of the opening brief, and during the period when the time for preparing respondent's answer brief was running.

It is true, this court has passed upon this statute in the cases of *Raymond v. Bales,* 26 Wash. 494, 67 Pac. 269; *Prescott v. Puget Sound Bridge etc. Co.,* 30 Wash. 158, 70 Pac. 252; *Chapin v. Port Angeles,* 31 Wash. 536, 72 Pac. 117; and *Ellis v. Bardin,* 36 Wash. 122, 78 Pac. 677. In *Raymond v. Bales, supra,* it distinctly appears that the transcript was filed within the ninety days. The same fact appears in *Prescott v. Puget Sound Bridge etc. Co.,* while in *Chapin v. Port Angeles,* the record shows that an extension of time for filing appellant's opening brief had been regularly obtained by order of the superior court, and the briefs and transcript were filed within such extended time. In *Ellis v. Bardin,* where a transcript was filed after the ninety days had expired, the appeal was dismissed, no sufficient excuse for the delay having been shown. No sufficient excuse for delay has been shown in this case, and for that reason, if no other, this appeal should be dismissed on the authority of *Ellis v. Bardin, supra.* With due respect for the views of my associates, and also for the former holdings of this court, I am, nevertheless, of the opinion that the statute, in so far as it requires the transcript to be prepared, certified, and filed within ninety days, and also to be filed at or before the time of the filing of appellant's opening brief, was not intended to be directory merely, but mandatory, for the benefit of the respondent. When appellant's opening brief has been filed before, and the transcript after, the ninety days has expired, and such transcript has not been filed until after respondent has made his motion to dismiss, as in this action, the appeal should be dismissed.

The majority of the court having refused to dismiss the appeal, I concur upon the merits.