[No. 10342.   Department Two.   September 10, 1912.]

## A. M. MEIGS, *Respondent*, v. JOHN PORTER *et al.*, *Appellants.*[1]

MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE—SAFE PLACE—DUTY TO WARN—QUESTION FOR JURY.   In ordering a servant into a dangerous place to remove a piece of iron suspending a heavy tank which was being lowered by a derrick to a car, the master owes the imperative duty to warn the servant of the removal of a rope holding the tank, rendering the work unnecessarily dangerous; and it was for the jury to determine whether the master was guilty of negligence in failing to keep the place safe, or give warning of impending danger by the removal of the rope, where the evidence was conflicting as to whether the servant had notice, and showed that no one would have been injured if the tank had been lowered by the rope after removal of the iron, as was the intention from the beginning.

SAME—ASSUMPTION OF RISKS—OBEDIENCE TO ORDERS.   In such case, the servant does not assume the risks in obeying the order if the rope was not removed when he went into the place to work.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT.   A verdict for $3,000, reduced by the trial court to $1,500, in favor of a carpenter 42 years of age for injuries to a foot, will not be reduced as excessive, where he was confined to his bed six weeks, and used crutches for some time, and was still lame and was suffering much pain six months after the injury, and the prospect for a complete recovery was reduced by his age.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered December 6, 1911, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee assisting in moving an iron water tank.   Affirmed.

*Cannon, Ferris & Swan* and *John B. White,* for appellants.
*John M. Gleeson,* for respondent.

ELLIS, J.—This appeal is prosecuted by the defendants from a judgment rendered upon the verdict of a jury in

[1]Reported in 126 Pac. 411.

favor of the plaintiff, for damages for personal injuries suffered by him while in the defendants' service, which injuries he claims were caused by their negligence.

The testimony introduced on behalf of the plaintiff tended to establish the following facts. The plaintiff, an experienced carpenter, forty-two years of age, was employed in repairing cars in the defendants' railroad construction works. Upon the day of the accident, the defendants were placing in position upon a steam shovel car an iron water tank about two feet wide, six feet high, and ten feet long, weighing about 1,200 pounds. There was a vestibule at the end of the car. The engine and boiler of the steam shovel were in position on the car immediately in front of this vestibule. The space for the water tank was on the left of the engine and boiler, and the tank had to be lowered from above edgewise into this space so that it, with the engine and boiler, would occupy practically the whole cross-section of the car immediately in front of the vestibule for a height of about six feet. The roof and sides of the car had been removed, save the side framework. There was a heavy wooden door, swung with hinges from the top, which when down covered the front of the vestibule. At the time in question, this was raised and laid back over the top of the vestibule, forming a roof over that part of the car. The tank was being lowered by means of a steam derrick placed near the car, a strong rope having been placed about the tank, which was thus pendant from the boom of the derrick. The work was being personally directed by the engineer, who was also foreman in charge of the works, with full power to hire and discharge men.

When the foreman was ready to install the tank, the plaintiff, by the foreman's direction, was called from his work in the car shop to assist in placing the tank. The foreman himself had charge of and operated the steam derrick. When the tank, by means of the rope and boom, had been swung above the car and lowered through the open roof into its narrow space beside the engine, it caught upon a projecting

piece of scrap iron or a lug riveted to the side of the boiler, so that the end nearest the vestibule hung about two feet (defendants' witnesses testified five or six inches) above the floor of the car, while the other end rested upon the floor. The foreman directed the plaintiff and another man to get upon the floor of the vestibule and with a crowbar knock off the piece of iron from the side of the boiler so that the tank could settle into its place. In compliance with this order, the plaintiff took the crowbar and loosened the piece of iron from the boiler, when the heavy tank fell upon the crowbar causing it to strike the plaintiff's foot, inflicting the injury complained of. There was very little dispute as to these facts, and we think they were clearly established by the evidence as a whole.

The appellants contend that they were guilty of no negligence. The negligence charged is that the appellants, through their foreman, relaxed the rope by which the water tank was suspended without warning to the plaintiff, so that, when released from the impeding piece of iron, the tank fell, causing the injury. This presents the only seriously controverted question of fact. The evidence plainly establishes the fact that the rope was removed from about the tank before the respondent knocked the iron lug from the side of the boiler. The foreman testified that he caused the rope to be removed before ordering the respondent to loosen the iron. The respondent testified positively that at that time the rope had not been loosened, and that he supposed that the rope was still on when he removed the iron. No one testified that he was warned of the removal of the rope. It is argued that if he had looked he would have seen that the rope had been removed, but he testified that the door lying over the top of the vestibule where he was, and the engine and tank in front of him, prevented his looking above the tank. We think, upon this evidence, the question of negligence was clearly one for the jury. The respondent was ordered into a place where, in bending over to do the work required of

him, he could not protect himself from inevitable danger if the rope was removed, whether before or after he went there. It was the duty of the master to keep the place of work reasonably safe by holding the tank by means of the derrick and rope, or to warn the servant of the added danger caused by the removal of the rope. By his own act the foreman made the place to which he had ordered the respondent unnecessarily dangerous. This was negligence. Moreover, in any event, the duty to warn was imperative. *McLeod v. Chicago, Milwaukee & P. S. R. Co.*, 65 Wash. 62, 117 Pac. 749; *O'Brien v. Page Lumber Co.*, 39 Wash. 537, 82 Pac. 114; *Mullin v. Northern Pac. R. Co.*, 38 Wash. 550, 80 Pac. 814; *Grosjean v. Denny-Renton Clay & Coal Co.*, 62 Wash. 196, 113 Pac. 570; *Shannon v. Consolidated Tiger & Poorman Min. Co.*, 24 Wash. 119, 64 Pac. 169.

The contention that, as a matter of law, the respondent assumed the risk of an obvious danger cannot be sustained. When he was ordered to go into the vestibule and remove the iron lug the respondent had the right to assume that the place would be kept reasonably safe while he was obeying the order. If, as he testified, the rope had not been removed when he was so ordered, there was then no obvious danger to be encountered in obeying the order. There was nothing inherently unbelievable in his testimony. Its credibility was for the jury. Nor was it incumbent upon him to make an inspection, or watch to see that the rope was not removed while he was obeying the order. These principles have been so often announced by this court that it is useless to amplify them by argument. *Dumas v. Walville Lumber Co.*, 64 Wash. 381, 116 Pac. 1091; *Withiam v. Tenino Stone Quarries*, 48 Wash. 127, 92 Pac. 900; *Crow v. Northern Pac. R. Co.*, 45 Wash. 605, 88 Pac. 1022; *Liedke v. Moran Brothers Co.*, 43 Wash. 428, 86 Pac. 646, 117 Am. St. 1058; *Dean v. Oregon R. & Nav. Co.*, 38 Wash. 565, 80 Pac. 842; *Goldthorpe v. Clark-Nickerson Lumber Co.*, 31 Wash. 467, 71

Pac. 1091; *Christianson v. Pacific Bridge Co.*, 27 Wash. 582, 68 Pac. 191.

The appellants contend that the safe-place rule has no application to the facts of this case, and that the court erred in submitting that matter to the jury by an instruction. It is argued that if the place was dangerous it was made so "by the respondent's own act in prying loose the tank." What we have said of the evidence effectually disposes of this argument. It is manifest that if the rope had remained about the tank with the derrick sustaining the weight of the tank, the removal of the piece of iron would have endangered no one. The tank could then have been lowered and the rope afterwards removed, as the evidence shows was the intention from the start.

Finally, the appellants contend that the damages given were excessive. The respondent was injured on March 29. He was confined to his bed for six weeks and was, after that, upon crutches till July 1. At the time of trial, September 8, he was still lame, and testified that he suffered continual pain. Several physicians testified as to the condition of the foot. Their testimony was in sharp conflict. While there was no testimony that his injury was permanent, the physician who treated him testified that the probability of an early complete recovery would be less with a man of his age than with a younger man. The jury returned a verdict for $3,000. The trial court reduced this to $1,500. In such a case we do not feel warranted in further reducing the recovery.

The judgment is affirmed.

Mount, Parker, Morris, and Fullerton, JJ., concur.