[No. 19424.   Department Two.   March 31, 1926.]

ISAAC SKIDMORE, *Respondent*, v. CITY OF SEATTLE, *Appellant*.[1]

[1] STREET RAILROADS (15, 28)—INJURIES TO PERSON ON TRACK—SUFFICIENCY OF EVIDENCE. The negligence of a motorman in failing to see an unconscious man on the track, when slowly approaching for a distance of 180 feet, is a question for the jury, where other witnesses plainly saw him from about an equal distance.

[2] DEATH (31, 37-1)—DAMAGES—LOSS OF SERVICES. In a father's action for the wrongful death of a son, fifteen years of age, earning wages of 25 to 30 cents per hour while beginning to learn a good wage earning trade, an award of $1,200 as the loss of the son's prospective wages will be set aside as inadequate, and the sum of $2,500 awarded.

Appeal from a judgment of the superior court for King county, Charles E. Claypool, judge *pro tempore*, entered January 2, 1925, upon findings in favor of plaintiff, in an action for wrongful death, tried to the court. Reversed on plaintiff's appeal.

*Thomas J. L. Kennedy, Geo. A. Meagher,* and *Arthur Schramm,* for appellant.

*Rummens & Griffin,* for respondent.

PARKER, J.—The plaintiff, Skidmore, commenced this action in the superior court for King county, seeking recovery of damages from the defendant city for the death of his fifteen year old son, claiming that the death of the son was caused by the negligent operation of one of the city's street cars. A trial upon the merits in the superior court, sitting without a jury, resulted in findings and judgment awarding to the plaintiff recovery against the city in the sum of $1,200, for loss of services of the son during his minority, and the further sum of $140 incurred by the father for medical

[1]Reported in 244 Pac. 545.

and funeral expenses. From this judgment the city appealed. Thereafter the plaintiff father also appealed, claiming the judgment to be inadequate in amount.

The city maintains upon Westlake avenue two street car tracks running north and south, over which it operates its street cars. The east track carries the north bound cars, the west track carries the south bound cars. About six o'clock, during a November evening, the son had left his place of work on the west side of the avenue, a short distance south of John street, and proceeded easterly across the westerly track with a view of boarding a north bound street car, when one would stop upon reaching the southerly side of the crossing of John street. He crossed the west track about twenty feet south of John street and at a time when a street car was approaching on that track from the north, a short distance from him. He then seemed to have been also in the path of an automobile approaching from the south along the west track, and there is ground for believing that he was at about that time struck by the automobile, or the east side of the south bound street car, in his effort to step back to the west, out of the path of the automobile. However, at about that time he fell and lay unconscious on the west rail of the east track. There was then approaching from the south on the east track a street car, some distance away, at a slow rate of speed. The distance of that car from him when he fell is not made certain, but it was probably about 180 feet distant and was moving at such a slow rate of speed, and continued to move at such a slow rate of speed up to the John street crossing, that the motorman could, by exercising due care, have seen the son lying on the track and stopped the street car before reaching him. The street car

came on and ran against him, or partly over him, caus-
ing the injuries from which he died about nine hours
later.

The motorman did not see the son lying upon the
track at all, and seems not to have become conscious
of his presence until the front of the car struck or
partly ran over him, when the car was immediately
stopped, evidently about the time the front wheels
actually struck him. The street car was backed up
slightly, when the son was taken up, and, though in a
mangled condition, in some measure then regained con-
sciousness. One or two witnesses testified to having
seen the son lying on the track unconscious, when the
street car was some 180 feet distant from him. One or
two of these witnesses saw the son lying on the track,
apparently unconscious, from a distance of a hundred
feet or more, one of whom ran towards him with a view
of removing him from the danger of the on-coming
street car, but failed in his efforts in that behalf.
These are, in substance, the facts as the trial judge was
warranted in viewing them from the evidence, and as
he apparently did view them, and from which he con-
cluded that the son lost his life as the result of the
negligent operation of the street car.

[1] It is strenuously argued that the motorman
should not be held negligent, because of the surround-
ing conditions; it being after dark and raining, so as
to in a large measure obscure his vision. Viewed
purely as a question of fact, there is some ground for
so arguing; but there were witnesses who did see the
son lying on the track, while a hundred feet or more
distant from him, whose opportunity for seeing him
there seems to have been no better than the opportunity
of the motorman for seeing him there. We cannot see
our way clear to disturb the trial court's conclusion on

the question of the negligent operation of the street car as the proximate cause of the son's fatal injuries.

[2] A more difficult question arises upon the father's appeal. We have seen that the trial court awarded him recovery in the sum of $1,200 as the loss of the son's prospective earnings during minority. The son was then fifteen years old, so there was approximately six years of the son's prospective earnings during his minority. The son had commenced to earn wages at the rate of 25 to 30 cents per hour while working, in his beginning of the learning of a good wage earning trade, though it was expected that he would finish the two remaining years of his high school course, earning at the same time considerable out of school hours. He seems to have been a somewhat promising youth. The father is a coal miner of quite moderate means. His circumstances are not such as to render it at all likely that he would, or could, afford to furnish the son further support and education during his minority, and thus render the son's earning power during his minority of little value. We, of course, must recognize that the father cannot recover more than his actual pecuniary loss, since the doctrine of punitive damages has been repudiated by this court in its repeated decisions. *Spokane Truck & Dray Co. v. Hoefer,* 2 Wash. 45, 25 Pac. 1072, 26 Am. St. 842, 11 L. R. A. 689; *Atrops v. Costello,* 8 Wash. 149, 35 Pac. 620; *Woodhouse v. Powles,* 43 Wash. 617, 86 Pac. 1063, 117 Am. St. 1079, 11 Ann. Cas. 54, L. R. A. (N. S.) 783; *Corcoran v. Postal Telegraph-Cable Co.,* 80 Wash. 570, 142 Pac. 29, L. R. A. 1915B 522. But our wrongful death statute, § 184, Rem. Comp. Stat., expressly provides that "a father . . . may maintain an action as plaintiff for the injury or death of a child . . . ;" and this, we have held, means substantial

damages, measured, as held in the early case of *Hedrick v. Ilwaco R. & Navigation Co.*, 4 Wash. 400, 30 Pac. 714, by

". . . The value of the child's services from the time of the injury until he would have attained the age of majority, taken in connection with his prospects in life, less the cost of his support and maintenance."

While this is a sound theoretical measure, it is, of course, one which is impossible of application with any degree of exactness in the vast majority of cases; but this measure of loss for the death of a minor is the only theoretical measure that can be adopted, having in mind that it is the actual pecuniary loss to the father that is the measure of his right of recovery. So, we must apply such measure as best we can, and upon that theory approximate the father's actual loss. We have here a case where the son had just entered his earning period. Manifestly, the earning period between fifteen and twenty-one years of age is, under all ordinary circumstances, much more productive than any other equal period of minority. A minor has then reached the age when he is likely, if at all, to become an asset rather than a liability to the parent, in a pecuniary sense. These considerations lead us to conclude that, under the circumstances here shown, the father's substantial pecuniary damage is more than $1,200, and for loss of the son's prospective earnings is approximately $2,500. The following of our decisions lend support to this conclusion: *Tecker v. Seattle, Renton & S. R. Co.*, 60 Wash. 570, 111 Pac. 791, Ann. Cas. 1912B 842; *Sweeten v. Pacific Power & Light Co.*, 88 Wash. 679, 153 Pac. 1054; *Blair v. Kilbourne*, 121 Wash. 93, 207 Pac. 953.

The judgment of the trial court is set aside and the cause remanded to that court with directions to enter

a judgment in favor of the cross-appellant father and against the appellant city for the sum of $2,640, with interest thereon from January 2, 1925, that being the date of the judgment rendered by the trial court, which is here upon appeal. The cross-appellant father will recover his costs incident to this appeal.

TOLMAN, C. J., MACKINTOSH, MAIN, and MITCHELL, JJ., concur.