[No. 40148. En Banc. November 27, 1968.]

DONALD WILSON et al., *Appellants*, v. LEE L. LUND et al., *Respondents.**

*Reported in 447 P.2d 718.

946

*Neil Hoff* and *Fred Frohmader,* for appellants.

*Merrick, Burgess & Hofstedt (F. Ross Burgess,* of counsel), for respondents.

HUNTER, J.—This is an appeal from an order dismissing the appellant, Karen Wilson, as a party plaintiff from an action for the wrongful death of her child, and prohibiting the introduction of psychiatric testimony as evidence of damages.

Karen Wilson joined with her former husband, Donald Wilson, plaintiffs (appellants; Karen Wilson hereafter will be treated as the sole party appealing), in bringing an action under RCW 4.24.010 (the child death statute) against the defendants (respondents). In the amended complaint each party plaintiff made a separate claim for damages. Prior to trial, the defendants moved (1) to dismiss Karen Wilson as a party plaintiff, and (2) to prohibit Karen Wilson from introducing psychiatric testimony on the issue of damages. An order was entered granting both motions, from which Karen Wilson has appealed.

The facts in this case may be briefly stated as follows. Donald and Karen Wilson were divorced in 1962, at which time the mother was awarded custody of the couple's three minor children. Donald Wilson was ordered to pay child support and has done so regularly. Karen Wilson has not been employed since the divorce and has not contributed financially to the support of the children. The father enjoys visitation privileges, although he presently no longer resides in this state. The Wilson's 5-year-old son Kelley was killed in a riding accident while a guest at the defendant's dude ranch on August 5, 1966. Both parents instituted suit against the ranch owners under RCW 4.24.010.

■ The appellant's first contention is that her dismissal as a party plaintiff was erroneous. She argues that she is entitled to maintain an action under the statute because the marital community has been dissolved and because she was the parent with custody of the deceased child. We agree.

We have examined the purpose of the statute, with reference to the statutory language and to our decisions interpreting that language, and we have concluded that the legislature, under the statute, created a substantive right of recovery running to both parents.

RCW 4.24.010, in pertinent part, reads:

A father, or in case of his death or desertion of his family, the mother may maintain an action as plaintiff for the injury or death of a minor child, or a child on whom either is dependent for support, and the mother for the injury or death of an illegitimate minor child, or an illegitimate child on whom she is dependent for support.

■ We said in *In re Horse Heaven Irrigation Dist.*, 11 Wn.2d 218, 226, 118 P.2d 972 (1941):

The courts, in pursuance of the general object of giving effect to the intention of the legislature, are not controlled by the literal meaning of the language of the statute, but the spirit or intention of the law prevails over the letter thereof.

. . . .

It is a rule of such universal application as to need no citation of sustaining authority that no construction should be given to a statute which leads to gross injustice or absurdity.

See also *Lenci v. Seattle,* 63 Wn.2d 664, 388 P.2d 926 (1964).

As stated in *Nationwide Papers, Inc. v. Northwest Egg Sales, Inc.,* 69 Wn.2d 72, 76, 416 P.2d 687 (1966):

Language within a statute must be read in context with the entire statute and construed in a manner consistent with the general purposes of the statute.

A learned writer has explained:

The presumption is that the lawmaker has a definite purpose in every enactment and has adapted and formu-

lated the subsidiary provisions in harmony with that purpose; that these are needful to accomplish it; and that, if that is the intended effect, they will, at least, conduce to effectuate it. That purpose is an implied limitation on the sense of general terms, and a touchstone for the expansion of narrower terms. This intention affords the key to the sense and scope of minor provisions. From this assumption proceeds the general rule that the cardinal purpose or intent of the whole act shall control, and that all the parts be interpreted as subsidiary and harmonious. "A statute is to be construed with reference to its manifest object, and if the language is susceptible of two constructions, one which will carry out and the other defeat such manifest object, it should receive the former construction." 2 Sutherland, Statutory Construction § 4704 (3d ed. Horack).

We approach the issue in this case with the above principles of statutory construction in mind.

In *Lockhart v. Besel,* 71 Wn.2d 112, 426 P.2d 605 (1967), we held that damages recoverable under RCW 4.24.010 should include compensation for loss of companionship. This decision was soon afterwards incorporated in the terms of an amendment to RCW 4.24.010, enacted by the 1967 extraordinary legislative session. Prior to *Lockhart v. Besel, supra,* recovery under the statute was limited to medical and funeral expenses plus the net value of the loss of the child's services. The *Lockhart* case and the subsequent amendment to the statute have further emphasized the manifest purpose of RCW 4.24.010: to allow both parents to recover for the injury inflicted on them by the wrongful death of a child, and this injury is now expressly defined by the legislature to include the highly personal elements of loss of companionship and "destruction of the parent-child relationship." RCW 4.24.010.

In addition to establishing the substantive right of recovery, RCW 4.24.010 (in the portion quoted, *supra*) explicitly deals with the procedural matter of who may bring the action. The husband is designated for this purpose, save in the event of his death, or his desertion of the family, or where the child is illegitimate. The statute is silent as to who may bring the action when there has been a divorce.

To hold, as argued by the respondents, that only the father can bring the action under the statute after a divorce, would mean that the divorced mother's rights would always be subject to the whim of the former husband, who might be hostile and who is under no legal duty to protect her rights. This result would be unjust and would defeat the legislative purpose. Accordingly, we hold that the divorced mother is entitled to bring suit in her own name under RCW 4.24.010. See *Haddock v. Florida Motor Lines Corp.*, 150 Fla. 848, 9 So.2d 98 (1942).

The appellant secondly contends that the trial court erred in entering its order prohibiting her "from calling a psychiatrist to testify as to injury to parent-child relationship and/or loss of companionship."

We do not reach the arguments advanced by the appellant in support of admitting such testimony, since the order entered by the trial court was premature. It is improper for a trial court to determine in a pretrial order, that potential evidence is irrelevant, without having called for an offer of proof or its equivalent. This would be deciding the relevancy of evidence upon the basis of conjecture.

We reverse the order of the trial court and remand this cause for further proceedings not inconsistent with this opinion.

FINLEY, C. J., ROSELLINI and HALE, JJ., concur.

HAMILTON, J. (concurring)—I concur with the result reached by the majority opinion in this case.

I pause only to point out that the legislature by RCW 4.24.010 seemingly, if not manifestly, intended to create a cause of action springing from the wrongful injury or death of a minor child, for the *benefit of both parents* of the child, and, this court has indirectly, if not directly, recognized such to be the case. *Atkeson v. Jackson Estate*, 72 Wash. 233, 130 Pac. 102 (1913), and *Upchurch v. Hubbard*, 29 Wn.2d 559, 188 P.2d 82 (1947). In each of the cited cases, both parents were party plaintiffs, and, although the question of the mother's status as a party plaintiff was appar-

ently not raised in either case, this court accepted her participation somewhat as a matter of course and spoke of the right of the "parents" to recover damages. I cannot, therefore, agree with the dissent, which implies, in part at least, that the cause of action is one created for and resting, under normal circumstances, exclusively in the father. Certainly, the language of the statute, couched as it is in somewhat permissive terms, does not dictate such a conclusion, nor does it expressly exclude in the ordinary case the joinder of the mother as a party plaintiff. In short, it simply permits a father, who is alive and has not deserted his family, to maintain the action, without explicitly denying any right in the mother to join in the action as a party plaintiff.

This view of the implications of the statute would appear to be further borne out by the case of *Dean v. Oregon R. & Nav. Co.*, 38 Wash. 565, 80 Pac. 842 (1905), wherein this court partially considered the propriety of the father and mother being named as joint plaintiffs in an action under RCW 4.24.010. In sustaining the trial court's refusal in that action, over the objection of the defendant, to dismiss the mother until the conclusion of the evidence, this court stated, at 569 of the opinion:

> Without deciding whether or not husband and wife may jointly maintain an action of this kind, we do not think the trial court committed error in dismissing the wife and permitting the husband to continue the action. It is not perceived that this action of the court in any manner prejudiced the rights of appellant. The spirit of our code permits and requires great liberality in all matters of pleading and practice, to the end that substantial justice may be attained. We think the action of the trial court in this particular was justifiable.

Certainly, if the telescope of substantial justice and liberality in matters of pleading and practice was perceptive enough in 1905 to permit the joinder of the mother as a party plaintiff, and her retention in that status until the conclusion of the evidence at trial, that perceptiveness has not been so eroded by the passage of time or by the adop-

tion of our later, and presumably more liberal, rules of practice and procedure, as would preclude the joinder and separate statement of claim of a mother under the circumstances prevailing in the instant case.

Furthermore, since the decision in *Lockhart v. Besel*, 71 Wn.2d 112, 426 P.2d 605 (1967), permitting recovery for loss of companionship, as well as pecuniary loss, there would appear to be substantially more reason why a mother would and could be a proper or permissible, if not an indispensable or necessary, joint party plaintiff.

Against this background, then, it seems to me we are dealing in the instant case more with the procedural and pleading aspects of the basic cause of action erected by RCW 4.24.010 than with truly substantive matters, when we discuss the propriety of Mrs. Wilson being a joint party plaintiff and stating a separate claim for relief.

This being so, I perceive no great violence being done to RCW 4.24.010 and the cause of action it gives rise to when the conclusion can be readily reached under modern rules of procedure that a living and available divorced father, who has not otherwise deserted his family,[1] is a necessary party, and the divorced mother is a proper or permissible party, if she wishes to be, with each being authorized to assert his or her respective claims of loss. Clearly, such a procedure avoids the potential of a second suit that might become necessary to apportion any award of damages between the father and the mother.

I conclude, as does the majority, that the trial court erred in granting respondents' motion to dismiss the appellant mother from the action. She is entitled to reinstatement.

DONWORTH, J.[†] (dissenting)—Since, in my opinion, the majority has for the first time in the history of the court

---

[1] We held in *Clark v. Northern Pac. Ry.*, 29 Wash. 139, 69 Pac. 636 (1902) that a divorced mother could institute and maintain the action in her own name where it appeared that the divorced father had failed to contribute support for the child and had disappeared. Under these circumstances the father was deemed to have deserted his family within the contemplation of the statute.

[†]Judge Donworth is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

created a new right of action under circumstances where none existed before, I feel that I should state the reasons for my disagreement in some detail. I am convinced that only the legislature has power to designate the persons who may maintain such an action and to prescribe the conditions under which such cases may be prosecuted.

The statute (RCW 4.24.010) authorizing actions for the wrongful death of a minor child has never been changed with respect to the problem now before this court since it was enacted in 1869.

In the Code of 1881 § 9, we find the following language:

> A father, or in case of the death or desertion of his family, the mother may maintain an action as plaintiff for the injury or death of a child, and a guardian for the injury or death of his ward.

In *Skeels v. Davidson*, 18 Wn.2d 358, 368, 139 P.2d 301, 149 A.L.R. 225 (1943) this court after quoting this statute stated:

> The statute has so read since 1869, with this exception: The word "minor" was inserted in 1927 (Laws of 1927, chapter 191, p. 241, § 1).

Later in the decision, at 373, the following statement is found:

> No recovery for wrongful death was allowed at common law. Following the passage by the English Parliament of Lord Campbell's Act in 1846, similar legislation was passed in all jurisdictions whose legal systems are based on the common law of England, including all of the United States.

*Upchurch v. Hubbard*, 29 Wn.2d 559, 563, 188 P.2d 82 (1947) involved an action for damages arising out of the death of an 8-year-old boy who fell off the running board of a mail delivery truck. Judge Steinert, speaking for the court, discussed at length the legal basis for the action. He said:

> The authority for the commencement and maintenance of this action by the parents of their deceased minor child is found in Rem. Rev. Stat., § 184 [P.P.C. § 3-23], which provides:

"A father, or in case of his death or desertion of his family, the mother may maintain an action as plaintiff for the injury or death of a minor child. . . ."

This section of the statute and §§ 183, 183-1 [P.P.C. §§ 3-13, 3-15], all relating to actions for wrongful death, are patterned upon Lord Campbell's Act (9-10 Victoria (1846), chapter 93) although differing in certain respects from the provisions of the English act.

As stated in *Hedrick v. Ilwaco R. & Nav. Co.,* 4 Wash. 400, 30 Pac. 714,

"The object and purpose of these statutes is to provide a remedy whereby the family or relatives of the deceased, who might naturally have expected maintenance or assistance from the deceased, had he lived, may recover compensation from the wrongdoer commensurate with the loss sustained."

By the great weight of authority, such statutes are not "survival statutes," but create a new cause or right of action. 16 Am. Jur. 48, Death, § 61; 25 C. J. S. 1077, Death, § 15. This court has adopted that principle. *Brodie v. Washington Water Power Co.,* 92 Wash. 574, 159 Pac. 791; *Crevelli v. Chicago, Milwaukee & St. P. R. Co.,* 98 Wash. 42, 167 Pac. 66, 66 L. R. A. 1918A, 206; *Grant v. Fisher Flouring Mills Co.,* 181 Wash. 576, 44 P. (2d) 193; *Ryan v. Poole,* 182 Wash. 532, 47 P. (2d) 981; *Maciejczak v. Bartell,* 187 Wash. 113, 60 P. (2d) 31.

A limitation upon such independently created right, recognized by this court and elsewhere generally, is that the wrongful act or default must be of such character as would have entitled the injured person to maintain an action and recover damages, had not death ensued; stated conversely, if the deceased never had a cause of action, no right of action accrues under the wrongful death statute. 16 Am Jur. 61, Death, § 82; *Ryan v. Poole, supra.*

In the *Ryan* case, *supra,* we said:

"It is the general rule, under the wrongful death statutes of the various states, and it is the holding of this court, that such a statute creates a new cause of action and is not a survival statute, and that the measure of damages which the heirs or personal representatives could recover is different from that which the person killed could have recovered had he survived the injury and brought an action for damages. It is also generally held, and the decisions of this court are to the same

effect, that, if a deceased could not have recovered damages for his injury had he survived, his heirs or personal representatives cannot recover, because their right of recovery is dependent upon the right which the deceased would have had had he survived. If the deceased had no cause of action, none accrues to his heirs or personal representatives."

In the present case the trial court found that:

I

That the causes of action are for wrongful death of a five-year old boy who was a paying guest of defendant dude ranch.

II

That on August 5, 1966, the boy was killed as the result of an accident that took place while he was on a trail ride.

III

That Karen Wilson and Donald Wilson, plaintiffs, were divorced parents of the child at the time of the death and that plaintiff, Karen Wilson had the care, control and custody of the child subject to rights of visitation on the part of plaintiff Donald Wilson. That plaintiff Donald Wilson had been paying child support regularly.

V

That this action was brought under RCW 4.24.010.

The court ordered that "Plaintiff Karen Wilson is dismissed as a party plaintiff unless Plaintiff Donald Wilson waives his rights as plaintiff."[2] The court's basis for entering this order is stated in its conclusion of law 1 as follows:

That a mother under R.C.W. 4.24.010 has no separate claim for wrongful death of her child; that the father, if alive, has the primary right to bring the action and only in his own name; that only where the father has abandoned the child or waives his statutory right can the mother in her own name or under any circumstances maintain or bring a suit for her loss of companionship and/or injury to the parent-child relationship.

---

[2] It is not necessary to pass upon the question of whether Karen Wilson may. maintain the action if Donald Wilson should waive his rights as plaintiff. In my opinion that question is not now before the court.

It should be pointed out that our legislature has enacted two separate statutes providing for the recovery of damages for wrongful death: one pertaining to the death of an adult (RCW 4.20.010 and .020) and the other pertaining to the death of a minor (RCW 4.24.010).

Each of these statutes and its respective predecessors have been in existence for 100 years or more. While from time to time each has been amended, this court has without exception held that the class or classes of persons entitled to maintain an action for damages for wrongful death or entitled to benefit from such action, must be specifically designated by the legislature and not by the courts.

In *Whittlesey v. Seattle,* 94 Wash. 645, 163 Pac. 193 (1917) the minor children of Mrs. Whittlesey, who died in an automobile accident allegedly caused by the negligence of the city, instituted an action to recover damages for her wrongful death. She died in 1913 and the suit was brought under chapter 129, Laws of 1909, which at that time provided:

Section 1. That section 4828 of Ballinger's Annotated Codes and Statutes of Washington, be, and the same is, hereby amended to read as follows: Section 4828. The widow, or widow and her children, or child or children if no widow, of a man killed in a duel, shall have a right of action against the person killing him, and against the seconds and all aiders and abettors. When the death of a person is caused by the wrongful act or neglect of another, his heirs, or personal representatives may maintain an action for damages against the person causing the death. If the deceased leave no widow or issue, then his parents, sisters or minor brothers who may be dependent upon him for support and who are resident within the United States at the time of his death, may maintain said action, when the death of a person is caused by an injury received in falling through any opening or defective place in any sidewalk, street, alley, square or wharf, his heirs or personal representatives, or, if deceased leaves no widow or issue, then his parents, sisters or minor brothers who may be dependent upon him for support, and who are resident within the United States at the time of his death, may maintain an action for damages against the person whose duty it was, at the time of the

injury, to have kept in repair such sidewalk or other place. In every such action the jury may give such damages, as under all circumstances of the case may to them seem just.

The plaintiffs recovered a judgment in the trial court. On appeal the case was twice argued in this court. The en banc decision reversing the judgment had the unanimous concurrence of all the judges. After reviewing several of our prior decisions this court stated, *Whittlesey v. Seattle, supra,* at 651:

But the reasoning of the court denying a right of action to the father is equally forceful to deny a right to the child; or, as it may be put, a statute granting a right of action will not be extended beyond its terms. The right of action given by statute is: (1) To the widow, widow or children, or child or children of a *man* killed in duel; (2) to his heirs or personal representatives, or if there be no widow, child or children then to dependent parents, sisters and minor brothers; and (3) in case of death caused by an injury in falling through any opening in any sidewalk or street, to the heirs or representatives, or if the deceased leaves no widow etc., then to dependent relatives, etc. In each instance the word "man," "person," or "deceased," is used in contradistinction to the word "widow," and other descriptive words, not only implying, but suggesting, with all the force of apt expression, that the legislature had in mind the word "man," or "male person," or "deceased male person," in the same sense as the word "man" is used in the first enactment ever put upon our statute books—that is, the act of 1854; the central thought of the legislature evidently being that the husband was the support of the family, and that his death would operate to deprive the widow, or widow and children, or child or children, of such support. This theory of dependence upon the husband is further emphasized by reference to the act of 1909, where the right of action is extended to include dependent parents, sisters, and minor children. It seems never to have occurred to the legislature that children might be dependent upon a mother; that a husband might suffer a loss by reason of the death of a wife; or, if it did, the thought was rejected.

Lord Campbell's act, 9 and 10 Vic. c. 93, which, in the language of Judge Cooley, has formed the model for

much of the legislation in this country, being passed, as said by this court in *Hedrick v. Ilwaco R. & Nav. Co., supra* [4 Wash. 400, 30 Pac. 714 (1892)] to obviate the defects in the common law, is plain in its terms. It leaves no room for construction. But it is only valuable to us as a standard for the purpose of comparison and as an aid in finding the legislative intent. And here is to be noted a plain departure from Lord Campbell's act. By § 2 of that act, it is provided that the action "shall be for the benefit of the wife, husband, parent and child of the person whose death shall have been caused," etc. If, then, in drafting our statute, the legislature deliberately omitted the word "husband" from the act, it would seem that it did not intend to extend the benefit to a surviving husband or to anyone other than a widow or children dependent upon, or orphaned by the death of, the father.

. . . .

The right of action in the case of wrongful death being wholly statutory, the legislature having power to give, or to withhold, within the limits of its discretion, it would seem that the omission of the words widower or surviving husband, and the choice of the descriptive word "widow," would indicate, as plainly as legislative intent can be indicated, a purpose to give no right of action for the death of a wife and mother. The words "child," "children," "issue," etc., qualify and must be read in connection with the word "man," "person," "deceased," etc.

. . . .

Following the rule that statutes giving or creating a right of action unknown to the common law will be strictly construed when determining the persons or classes of persons who are entitled to their benefit, and keeping in mind our argument upon the main question, we find no warrant for holding that we have power to declare, by resort to the statutes relied on, that the legislature used the word widow, a word of distinct and well understood meaning in the law, inadvisedly. As is said in the *Johnson* case: [*Johnson v. Seattle Elec. Co.*, 39 Wash. 211, 81 Pac. 705 (1905)] "If it [the legislature] had intended to confer so valuable a right upon a widower in his own behalf, it would doubtless have so said in express terms." This must be so, for with Lord Campbell's act before it as a model, the legislature might choose or reject beneficiaries at will.

Section 183 creates the right of action and defines those entitled to its benefits. The words employed are common and all expressive. There is no ambiguity or latent meaning in the act. To extend its terms to meet what we conceive to be a legislative omission deliberately contrived would be to create rather than to construe a statute.

The last paragraph of the lengthy opinion, at 661, is of some interest:

We feel that it is not out of place to suggest to the legislative body that § 183 should be rewritten so that it will be more in harmony with the statutes of almost every other state in the Union, and be available to all of those who ought, in justice, to come within its beneficient purposes.[3]

Chapter 123, Laws of 1917, (See RCW 4.20.020) provided that the personal representative of the deceased should maintain the action for wrongful death for the benefit of the wife, husband, child or children of the deceased or, in lieu thereof for other designated relatives. This act is still in effect. *See Mills v. Inter Island Telephone Co.,* 68 Wn.2d 820, 416 P.2d 115 (1966). *Cf. Gray v. Goodson,* 61 Wn.2d 319, 378 P.2d 413 (1963).

In *Armijo v. Wesselius,* 73 Wn.2d 716, 440 P.2d 471 (1968) the dissenting opinion (concurred in by four judges) refers to RCW 4.20.020 and states that with respect to the problem involved in that case (whether the word "children" in the statute included illegitimate children): "The legislature is the proper forum for any change to be made under that provision."

The statute relating to the wrongful death of a minor child (RCW 4.24.010), was involved in *Lockhart v. Besel,* 71 Wn.2d 112, 426 P.2d 605 (1967) where this court in an en banc decision held for the first time that the measure of damages in such a case should include the parents' loss of

---

[3]This opinion was filed on February 16, 1917 while the legislature was in session. Apparently the court's suggestion received prompt attention for on February 27th the Senate passed chapter 123, Laws of 1917, the House did likewise on March 7th and the Governor approved the act on March 14th.

companionship during the child's minority. The court's opinion was filed on April 20, 1967. By coincidence the legislature enacted chapter 81, Laws of 1967 Ex. Ses. which amended RCW 4.24.010 by adding thereto the following:

In such an action, in addition to damages for medical, hospital, medication expenses, and loss of services and support, damages may be recovered for the loss of love and companionship of the child and for injury to or destruction of the parent-child relationship in such amount as, under all the circumstances of the case, may be just.

This statute was approved by the Governor on April 26, 1967 (6 days after the court's opinion was filed) and became effective July 30, 1967.

Incidentally, it is interesting to note that the court in *Lockhart, supra,* quoted at length from *Hedrick v. Ilwaco Ry. & Nav. Co.,* 4 Wash. 400, 30 Pac. 714 (1892) to the effect that it is settled beyond controversy that at common law no civil action could be maintained for damages resulting from the death of a human being and that the object of the statute was to create a new and independent right of action for the loss of services subsequent to the death of the child, which did not exist at common law.

The most recent decision of this court involving this same statute is *Clark v. Icicle Irrigation Dist.,* 72 Wn.2d 201, 432 P.2d 541 (1967) which was instituted by the parents of a 20-month-old son who had been killed by a break in an irrigation ditch which caused a large volume of water, mud and debris to slide down a steep hill and into their house. The case did not directly involve the question as to who had the right to maintain the action but the principal issue was the proper measure of damages. However, the court quoted the following from *Skidmore v. Seattle,* 138 Wash. 340, 343, 244 Pac. 545 (1926) in which we said:

But our wrongful death statute, § 184, Rem. Comp. Stat., expressly provides that "a father . . . may maintain an action as plaintiff for the injury or death of a child . . .;" and this, we have held, means substantial damages, measured, as held in the early case of *Hedrick v. Ilwaco R. & Navigation Co.,* 4 Wash. 400, 30 Pac. 714, by

> ". . . The value of the child's services from the time of the injury until he would have attained the age of majority, taken in connection with his prospects in life, less the cost of his support and maintenance."

This court upheld the trial court's judgment on the issue of liability but remanded the cause for a reduction in the amount of the damages.

Having reviewed at considerable length our prior decisions relating to wrongful death of both adults and minors, I now turn to a consideration of the facts of this case as found by the trial court and quoted above.

The pertinent language of the statute, which has remained unchanged for nearly 100 years, is:

> A father, or in case of his death or desertion of his family, the mother may maintain an action as plaintiff for the injury or death of a minor child, . . . .

The majority opinion interprets this language to mean that the legislature, under the statute, created a substantive right of recovery running to *both* parents, whereas it is clear that the statute affords the mother no right to maintain such action unless either the husband is dead or has deserted his family. It is stated by the majority that the statute should be liberally construed so as to avoid gross injustice or absurdity. The only case cited by the majority which appears to involve a similar question is *Haddock v. Florida Motor Lines Corp.*, 150 Fla. 848, 9 So.2d 98 (1942). In that case the court held that under the Florida statute a divorced wife could maintain an action for wrongful death of her child by bringing the suit in her ex-husband's name for her own use and benefit. The language of the Florida statute materially differs from ours. I see no reason stated in that decision which is persuasive in the case before us.

As I view it, such a construction is contrary to all the precedents which have been cited in this dissenting opinion. As this court said in the unanimous en banc decision in *Whittlesey, supra,* relative to section 183, at 654: (See RCW 4.20.020)

> Section 183 creates the right of action and defines those entitled to its benefits. The words employed are common

and all expressive. There is no ambiguity or latent meaning in the act. To extend its terms to meet what we conceive to be a legislative omission deliberately contrived would be *to create* rather than *to construe* a statute. (Italics mine.)

In the case before us the trial court found that Karen and Donald Wilson were the divorced parents of the 5-year-old boy at the time of his death; that Mrs. Wilson had custody of the boy, subject to visitation rights by Mr. Wilson. At the time of the death Mr. Wilson had been paying child support regularly.

There are only two situations in which, under RCW 4.24.010, the mother of a deceased child may maintain an action for damages resulting from the child's death: (1) where the father is dead or (2) where the father had deserted his family.

The trial court did not find that either of these two conditions existed in the present case. We should apply the statute as written by the legislature to the facts shown by the findings referred to above.

To say that the divorce of the parents is equivalent to the death of the father or his desertion of his family is to indulge in legislation in a field in which the legislature has exclusive jurisdiction. In my opinion, this is creating a statute rather than construing a statute.

For the reasons stated in our prior decisions which are cited herein, I would affirm the judgment of the trial court.

If the legislature desires to amend the statute to provide more liberal rights of action for the mother in the premises, that is the forum to which interested parties should resort.

HILL, NEILL, and McGOVERN, JJ., concur with DONWORTH, J. Pro Tem.